# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 81

APRIL TERM, A.D. 2015

June 9, 2015

| | |
|---|---|
| WALLOP CANYON RANCH, LLC, a Wyoming Limited Liability Company; | |
| Appellant (Defendant), | |
| v. | |
| SCOTT MADISON GOODWYN, individually, as a Limited Partner, for himself and derivatively on behalf of the WALLOP FAMILY LIMITED PARTNERSHIP, a Wyoming Limited Partnership, | S-14-0139 |
| Appellee (Plaintiff). | |
| SCOTT MADISON GOODWYN, individually, as a Limited Partner, for himself and derivatively on behalf of the WALLOP FAMILY LIMITED PARTNERSHIP, a Wyoming Limited Partnership, | |
| Appellant (Plaintiff), | |
| v. | S-14-0140 |
| PAUL STEBBINS WALLOP AS PERSONAL REPRESENTATIVE ON BEHALF OF THE ESTATE OF MALCOLM WALLOP, deceased; PAUL | |

STEBBINS WALLOP AS SUCCESSOR
TRUSTEE UNDER THE MALCOLM
WALLOP REVOCABLE TRUST
UNDER AGREEMENT DATED
JANUARY 2, 2008; PAUL STEBBINS
WALLOP, individually; WALLOP
CANYON RANCH, LLC, a Wyoming
Limited Liability Company; WALLOP
FAMILY LIMITED PARTNERSHIP, a
Wyoming Limited Partnership,

Appellees
(Defendants).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Wallop Canyon Ranch, LLC in Case No. S-14-0139, and all Appellees in
Case No. S-14-0140 except the Wallop Limited Partnership:*
    Anthony T. Wendtland of Wendtland & Wendtland, LLP, Sheridan, Wyoming.

*Representing Scott Madison Goodwyn:*
    S. Joseph Darrah of Darrah Law Office, P.C., Powell, Wyoming; Daniel B. Frank
    of Frank Law Office, P.C., Cheyenne, Wyoming. Argument by Mr. Darrah.

*Before DAVIS and FOX, JJ., and TYLER, SULLINS, and BROOKS, DJJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third.
Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building,
Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be
made before final publication in the permanent volume.**

*PER CURIAM.*

[¶1]    In 1992, Malcolm Wallop and French Wallop created an estate plan with the intention of owning and operating the Canyon Ranch and establishing a means of transferring ownership to their respective children.  Central to the estate plan is the Wallop Family Limited Partnership (WFLP), a Wyoming limited partnership, which owns and operates the Canyon Ranch.  Also as part of this estate planning, they formed Wallop Canyon Ranch, LLC (WCR), a Wyoming limited liability company, mainly to serve as the general partner of the WFLP.

[¶2]    Scott Goodwyn, individually, as a limited partner in the WFLP and derivatively on behalf of the WFLP, sued Malcolm Wallop, Paul Stebbins Wallop, WCR, the WFLP, Oliver Matthew Wallop, Amy Wallop Mann, and Malcolm Moncrieffe Wallop, alleging various breaches in the ownership, operation, and management of the WFLP.

[¶3]    After a bench trial, the district court found generally in favor of Goodwyn on his claims relating to gifts made to him and other limited partners, and adjusted a loan interest rate.  It found generally against Goodwyn on his claims of breach of fiduciary duties by certain defendants.  The district court also determined that the gifting issues upon which Goodwyn prevailed were derivative claims, and it held that Goodwyn was entitled to reasonable attorney's fees relating to the derivative claims pursuant to Wyo. Stat. Ann. § 17-14-1104.

[¶4]    In Docket No. S-14-0139, WCR challenges the basis of the award of attorney's fees.

[¶5]    In Docket No. S-14-0140, Goodwyn challenges the district court's findings and conclusions ultimately denying his claims of breach of fiduciary duties by certain defendants.

[¶6]    We find no error and affirm.

## ISSUES

[¶7]    In Docket No. S-14-0139, WCR presents the following issue:

> Did the trial court err when it concluded that [Goodwyn] had actually prevailed and successfully recovered upon a derivative claim at trial that would qualify him to recover attorney's fees and costs for this case under W.S. § 17-14-1104?

1

[¶8]   In Docket No. S-14-0140, Goodwyn presents the issues as follows:

> A. The district court erred in interpreting the plain language of the Certificate and Agreement of Wallop Family Limited Partnership and went outside the four corners of the document when it found the Judgment and Divorce Decree equivalent to a voluntary marital partition settlement agreement.
>
> B. The district court erred when it found [Goodwyn] must pierce the corporate veil of WCR, LLC in order to impose liability for fiduciary duty breaches by Malcolm and Paul Wallop.
>
> C. Malcolm and Paul Wallop engaged in diversion of corporate opportunities through the use of [Canyon Ranch Recreation, LLC (CRR)] and Elk Rock Companies.
>
> D. The district court erred in finding that [Goodwyn's] evidence of diversion of corporate opportunity was "too speculative."

## FACTS

### *Wallop Family Limited Partnership – Canyon Ranch*

[¶9]   Malcolm and French were married in May 1984. Malcolm has four children from a prior marriage: Paul, Oliver, Amy, and Malcolm M.; and French has a son from a prior marriage: Scott.[1]

[¶10]  In 1992, Malcolm and French created an estate plan with the intention of owning and operating their most significant asset, the Canyon Ranch,[2] and eventually to pass its ownership and operation to their Children. Among other things, the estate plan included the *Certificate and Agreement of Wallop Family Limited Partnership* (WFLP Agreement), executed by Malcolm and French on December 31, 1992. The WFLP Agreement led to the formation of the WFLP, a Wyoming limited partnership, which owns and operates the Canyon Ranch.

---

[1] Collectively, Paul, Oliver, Amy, Malcolm M., and Scott will be referred to herein as the "Children."
[2] The Canyon Ranch was, and still is, a vast expanse of ranch land and improvements, situated near the Big Horn National Forest and the Big Horn Mountains. Through a number of inheritances and family buyouts, Malcolm became the owner of the Canyon Ranch.

2

[¶11] Upon creation of the WFLP, Malcolm and French also formed WCR, a Wyoming limited liability company, to serve as the general partner of the WFLP. WCR received a two percent ownership interest in WFLP. Malcolm and French managed WCR. The initial members of the WFLP were Malcolm (49% ownership), French (49% ownership), and WCR (2% ownership). To begin implementing their estate plan's goal of transferring ownership of the Canyon Ranch, beginning in December 1995, Malcolm and French began gifting percentages of their respective WFLP ownership interests to their Children.[3]

[¶12] In April 2000, Malcolm filed for divorce against French. The Judgment and Decree of Divorce (Decree) was entered on August 13, 2002. The Decree awarded Malcolm all of French's interest in the WFLP and the WCR. This Court affirmed these awards to Malcolm in *Wallop v. Wallop*, 2004 WY 46, ¶¶ 32, 35, 88 P.3d 1022, 1032 (Wyo. 2004). Accordingly, French assigned to Malcolm her remaining limited partnership interests in the WFLP, as well as her remaining interests in WCR.

[¶13] Next, Paul purchased a 50% interest in WCR from Malcolm. Malcolm (50% owner of WCR) and Paul (50% owner of WCR) then became the managing members of WCR. After Malcolm passed away in September 2011, Paul, as 50% owner of WCR and also as Trustee of the Malcolm Wallop Revocable Trust, became the sole managing member of WCR.

[¶14] The primary asset of the WFLP is the Canyon Ranch (Ranch). At times, Malcolm and Paul made contributions to the WFLP for the operation of the Ranch. Also, to pay debts and provide additional income to the Ranch, the WFLP sold off parcels of its land. As of May 2011, the Ranch included approximately 2,860 acres.

[¶15] Historically, the Ranch has been used for various outdoor recreational activities and ranching operations. After the WFLP was established, the Ranch underwent several improvements, including construction of a lodge to provide guest accommodations. The Ranch and associated lodge provided paid recreational activities for guests. Over time, the WFLP has entered into various use agreements for purposes of using the Ranch for game bird hunting, big game hunting, livestock grazing, a gun club, and other recreational purposes. Paul and Malcolm, collectively and individually, owned or controlled entities that entered into certain of these use agreements with the WFLP.

[¶16] In March 2005, Paul offered to buy Goodwyn's interest in the WFLP. Goodwyn initially expressed interest in selling his share in the WFLP, but he first sought to have his interests determined. After investigating the scope and value of his interests in the

---

[3] By the end of the 1998 tax year, the partnership interests in the WFLP included: Malcolm (41.625%), French (41.625%), WCR (2.000%), Amy (2.950%), Oliver (2.950%), Malcolm M. (2.950%), Paul (2.950%), and Scott (2.950%).

3

WFLP, pursuing both individual claims and derivative claims on behalf of the WFLP, Goodwyn filed suit alleging accounting discrepancies in the WFLP and mismanagement of the WFLP by Malcolm and Paul.

## Federal Court case

[¶17] Goodwyn first filed suit against Malcolm, Paul, and the WCR (Federal Defendants) in the United States District Court for the District of Wyoming on March 31, 2009. The federal court case sought relief for Goodwyn, individually, and also based upon derivative claims on behalf of the WFLP. The Federal Defendants moved to dismiss the federal action, claiming that Goodwyn's claims were derivative in nature, thus making WFLP an indispensable party under F.R.C.P. 19. The federal court agreed and determined that the WFLP must be joined as a party. In so ruling, diversity jurisdiction was destroyed, depriving the federal court of subject matter jurisdiction, for which dismissal was granted.

## State Court case

[¶18] Goodwyn then filed his case in the district court against Malcolm;[4] Paul (individually, and as Personal Representative on behalf of the Estate of Malcolm Wallop, and as Successor Trustee under the Malcolm Wallop Revocable Trust); WCR; the WFLP;[5] and Oliver, Amy, and Malcolm M. (as limited partners in the WFLP).[6] Goodwyn's claims against these defendants (Wallop Defendants) relate to the ownership, operation, and management of the WFLP.[7] Goodwyn asserted claims for breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, and for an accounting. He also claimed that Malcolm had "rendered" a 1998 gift to all of the children during the divorce, and that the interest booked as due on loans by partners Paul and Malcolm to the partnership improperly adjusted annually instead of being set at the date of the loan.

[¶19] The district court held a five-day bench trial. At trial, Goodwyn sought a determination of his and the other limited partners' respective ownership interests in the WFLP; sought a determination regarding the effect of the transfer of French's interests in the WFLP to Malcolm; and claimed that the WCR, Malcolm, and Paul mismanaged the WFLP to the detriment of the limited partners. The district court found generally in favor

---

[4] Malcolm passed away on September 14, 2011. Subsequently, the district court entered an order substituting the "Estate of Malcolm Wallop, deceased" for "Malcolm Wallop."

[5] Goodwyn withdrew as a limited partner from the WFLP before the trial.

[6] Upon stipulation and waiver that they would be bound by the decision in this matter, Oliver, Amy, and Malcolm M., as limited partners in the WFLP, were dismissed from the case.

[7] Goodwyn also sought a judicial dissolution of the WFLP, but the district court granted the Wallop Defendants' motion for partial summary judgment prior to trial, denying Goodwyn's claim for judicial dissolution of the WFLP.

of Goodwyn on his claims relating to the gifting issues and the adjustment of the loan interest rate,[8] and generally against Goodwyn on his claims of breach of fiduciary duties. The district court found that the Wallop Defendants, individually or collectively, did not breach any fiduciary duties, mismanage WFLP property, or convert WFLP property.

[¶20] After trial, Goodwyn sought an award of attorney's fees and costs. The Wallop Defendants argued that Goodwyn did not prevail upon any claims for which he should receive an award of attorney's fees. The district court held a hearing regarding attorney's fees and costs, determined that Goodwyn prevailed at trial upon derivative claims, and pursuant to Wyo. Stat. Ann. § 17-14-1104, it awarded Goodwyn reasonable attorney's fees and costs.

## STANDARD OF REVIEW

[¶21]     Following a bench trial, this court reviews a district court's findings and conclusions using a clearly erroneous standard for the factual findings and a *de novo* standard for the conclusions of law. *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo. 2005) (citing *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo. 2003) and *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo. 1999)).

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

---

[8] The partnership must actually pay more interest with this adjustment.

*Piroschak*, ¶ 7, 106 P.3d at 890. Findings may not be set aside because we would have reached a different result. *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo. 2004). Further,

> we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Id.* (quotation marks omitted) (some citations omitted).

*Pennant Serv. Co. v. True Oil Co., LLC*, 2011 WY 40, ¶ 7, 249 P.3d 698, 703 (Wyo. 2011) (quoting *Hofstad v. Christie*, 2010 WY 134, ¶ 7, 240 P.3d 816, 818 (Wyo. 2010)).

## DISCUSSION

### *Award of attorney's fees*

[¶22] WCR challenges the district court's award of reasonable attorney's fees and costs to Goodwyn, asserting that Goodwyn did not prevail upon any claims at trial that would allow him to recover attorney's fees and costs.

[¶23] We review the award of Goodwyn's attorney's fees as follows:

> The question of whether there is legal authority to award attorney fees is one of law, which we review *de novo*. *See, Thorkildsen v. Belden*, 2011 WY 26, ¶ 8, 247 P.3d 60, 62 (Wyo. 2011); *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 149, 226 P.3d 889, 935 (Wyo. 2010); *Breitenstine v. Breitenstine*, 2006 WY 48, ¶ 12, 132 P.3d 189, 193 (Wyo. 2006). The final attorney fee award is, however, reviewed for abuse of discretion. *Mueller v. Zimmer*, 2007 WY 195, ¶ 11, 173 P.3d 361, 364 (Wyo. 2007).

*Evans v. Moyer*, 2012 WY 111, ¶ 37, 282 P.3d 1203, 1214 (Wyo. 2012).

[¶24] "Although Wyoming generally subscribes to the American rule regarding the recovery of attorney's fees, under which rule each party pays his or her own fees, a prevailing party may be reimbursed for attorney's fees when provided for by contract or

statute." *Weiss v. Weiss*, 2009 WY 124, ¶ 8, 217 P.3d 408, 410-11 (Wyo. 2009) (citing *Forshee v. Delaney*, 2005 WY 103, ¶ 7, 118 P.3d 445, 448 (Wyo. 2005)).

[¶25]   The primary question presented in WCR's appeal is whether the district court had the statutory authority to award Goodwyn reasonable attorney's fees pursuant to Wyo. Stat. Ann. § 17-14-1104 (LexisNexis 2013):

> If a derivative action is successful, in whole or in part, or if anything is received by the plaintiff as a result of a judgment, compromise or settlement of an action or claim, the court may award the plaintiff reasonable expenses, including reasonable attorney's fees, and shall direct him to remit to the limited partnership the remainder of those proceeds received by him.

[¶26]   WCR argues that Goodwyn is not entitled to attorney's fees under this statute, since he recovered only upon his "direct claims" and not upon "derivative claims." Conversely, Goodwyn claims that he did prevail upon "derivative claims," and Wyo. Stat. Ann. § 17-14-1104 authorizes an award of attorney's fees in this case.[9]

[¶27]   The language of Wyo. Stat. Ann. § 17-14-1104 is clear and unambiguous, and we give effect to the plain and ordinary meaning of its words. *See Redco Constr. v. Profile Props., LLC*, 2012 WY 24, ¶ 26, 271 P.3d 408, 415-16 (Wyo. 2012). It is unnecessary for us to turn to traditional rules of statutory construction to discern the intent of this statute. *Id*. Under Wyo. Stat. Ann. § 17-14-1104, a court may award a plaintiff reasonable expenses, including reasonable attorney's fees if: (1) he is successful, in whole or in part, on a derivative claim; or (2) if the plaintiff, in a derivative action, received anything as a result of a judgment, compromise or settlement of an action or claim. Our inquiry begins with whether Goodwyn was "successful, in whole or in part," on a derivative claim.

[¶28]   There is little precedent in Wyoming involving derivative suits; however this Court has described the nature of a shareholder's derivative action as follows:

---

[9] Goodwyn maintains that WCR has taken a position in this case that is inconsistent with its position in the federal court proceedings, regarding whether Goodwyn's claims are derivative claims or direct claims, and as such, he argues that WCR should be judicially estopped from raising the issue now. It appears from the record that Goodwyn's judicial estoppel argument is being raised for the first time in this appeal. *Miller v. Beyer*, 2014 WY 84, ¶ 34, 329 P.3d 956, 967 (Wyo. 2014). "[I]t is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." *Willis v. Davis*, 2013 WY 44, ¶ 21, 299 P.3d 88, 94 (Wyo. 2013) (citations omitted). Since Goodwyn did not raise the claim of judicial estoppel before the district court, we will not consider Goodwyn's arguments regarding this claim on appeal. We will confine our review under Docket No. S-14-0139 to whether Goodwyn was entitled to reasonable attorney's fees under Wyo. Stat. Ann. § 17-14-1104.

Whenever a cause of action exists primarily in behalf of the corporation against directors, officers, and others, for wrongfully dealing with corporate property, or wrongful exercise of corporate franchises, so that the remedy should be legally obtained through a suit by and in the name of the corporation, and the corporation either actually or virtually refuses to institute or prosecute such a suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrongdoing directors, officers, and other persons. * * * The stockholder does not bring such a suit because [h]is rights have been [d]irectly violated or because the cause of action is [h]is or because [h]e is entitled to the relief sought; he is permitted to sue in this manner simply in order to set in motion the judicial machinery of the court. The stockholder, either individually or as the representative of the class, may commence the suit, and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by the corporation, it is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder-plaintiff.

*Centrella v. Morris*, 597 P.2d 958, 962 (Wyo. 1979) (internal quotation marks and citations omitted) (quoting *Smith v. Stone*, 21 Wyo. 62, 128 P. 612, 620-621 (Wyo. 1912)). "Derivative actions are those 'by one or more stockholders to enforce a corporate cause of action.'" *GOB, LLC v. Rainbow Canyon, Inc.*, 2008 WY 157, ¶ 13, 197 P.3d 1269, 1272 (Wyo. 2008) (quoting 7C Charles A. Wright, et al. *Federal Practice and Procedure: Civil* § 1821, at 6 (3d ed. 2007)). "As a general rule, recovery in such actions inures to the corporation rather than to the stockholders as individuals." *Lynch v. Patterson*, 701 P.2d 1126, 1130 (Wyo. 1985) (citing *Shareholders' Right to Direct Recovery in Derivative Suits,* 17 Wyo. L.J. (1963)).

[¶29] Within the limited partnership context, in distinguishing between "derivative claims" and "direct claims," the reviewing court must look to whether a plaintiff has alleged a special injury:

A claim is derivative in nature where the plaintiff was not injured "directly or independently" of the partnership. Furthermore, in determining whether or not a claim is direct or derivative, the court must look ultimately to whether the

8

plaintiff has alleged a special injury. Where a suit by a limited partner against a general partner clearly alleges wrongs to the partnership which have indirectly damaged the limited partner, the action asserts a derivative claim on behalf of the partnership, not one personal to the plaintiff.

In ascertaining whether a cause of action arising in a limited partnership context is derivative, it is appropriate to look to corporate law for guidance. Under the latter law, the nature of the wrong alleged is what controls.

59A Am. Jur. 2d *Partnership* § 906, at 821 (2003).

[¶30] Here the district court found that Goodwyn prevailed upon a claim that was derivative in nature, and it determined that Goodwyn was entitled to reasonable attorney's fees under Wyo. Stat. Ann. § 17-14-1104. Specifically, the district court found:

While the Court finds that ultimately [Goodwyn] failed to recover on his claim for breach of the duty of care and/or loyalty, [Goodwyn] did prevail on the gifting issues. These issues had an effect on the entire limited partnership, and thus may be considered sufficiently derivative in nature that an award of reasonable expenses including reasonable attorney's fees is appropriate. Pursuant to U.R.D.C 501, [Goodwyn] may submit a certificate of costs. [Goodwyn] should be mindful of *Stafford v. JHL, Inc.*, 194 P.3d 315 (Wyo. 2008), which requires [Goodwyn] to sufficiently itemize his certificate so that the Court may distinguish which costs may be appropriately recovered.

[¶31] We agree with the district court's characterization of Goodwyn's successful claims in this instance. As a result of the district court's decision, the WFLP books and tax records were to be corrected accurately to reflect all outstanding partner loan debts and ownership interests. The gifting issues had an impact upon the WFLP as a whole ("These issues had an effect on the entire limited partnership[.]"). Although Goodwyn may have been affected indirectly, the gifting issues are derivative claims on behalf of the WFLP and were not personal to Goodwyn individually. *See* 59A Am. Jur. 2d *Partnership* § 906, at 826. Thus, Goodwyn was not injured "directly or independently" of the WFLP. The derivative claims were brought on behalf of the WFLP for the benefit of the partnership. *Centrella*, 597 P.2d at 962-63. Accordingly, the final relief for the derivative claims belongs to the WFLP, and not to Goodwyn individually.

9

[¶32] Since Goodwyn was, in part, successful on a derivative claim, Wyo. Stat. Ann. § 17-14-1104 authorizes the award of his reasonable expenses, including reasonable attorney's fees. *See Gose*, 822 P.2d at 848. The district court properly determined that Goodwyn was entitled to reasonable attorney's fees under Wyo. Stat. Ann. § 17-14-1104, and we affirm.

### *Interpretation of the WFLP Agreement (reacquisition of French's shares)*

[¶33] Goodwyn argues that the district court erred when it determined that the transfer of French's WFLP ownership interest pursuant to the Decree was an authorized transfer under the WFLP Agreement. Goodwyn maintains that the court's adjudication is contrary to the plain and unambiguous language of the WFLP Agreement. He also claims that the district court improperly relied upon matters outside the "four corners" of the WFLP Agreement in arriving at its decision.

[¶34] The district court's interpretation of the WFLP Agreement presents questions of law, which we review *de novo*. *Weiss*, 2008 WY 30, ¶ 15, 178 P.3d at 1097. We will apply well-known principles of contract interpretation to ascertain the parties' intentions in the WFLP Agreement.[10]

[¶35] The fundamental goal of contract interpretation is to determine the intent of the parties. *Whitney Holding Corp. v. Terry*, 2012 WY 21, ¶ 36, 270 P.3d 662, 673 (Wyo. 2012). The "language of the parties expressed in their contract must be given effect in accordance with the meaning which that language would convey to reasonable persons at the time and place of its use." *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 22, 226 P.3d 889, 905 (Wyo. 2010) (quoting *Moncrief v. Louisiana Land Exploration Co.*, 861 P.2d 516, 524 (Wyo. 1993)). This Court employs "common sense in interpreting contracts and ascribe the words with a rational and reasonable intent." *Id.*, ¶ 22, 226 P.3d at 905. "When the provisions in the contract are clear and unambiguous, the court looks only to the 'four corners' of the document in arriving at the intent of the parties." *Claman v. Popp*, 2012 WY 92, ¶ 26, 279 P.3d 1003, 1013 (Wyo. 2012) (citations omitted). "In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate." *Id.* (citation omitted).

> We have said that we will construe contract language "in the context in which it was written, looking to the surrounding circumstances, the subject matter, and the purpose of the agreement to ascertain the intent of the parties

---

[10] Under the Wyoming Uniform Limited Partnership Act, Wyo. Stat. Ann. §§ 17-14-201 through 17-14-1104, a "'[p]artnership agreement' means any valid agreement, written or oral, of the partners as to the affairs of a limited partnership and the conduct of its business[.]" Wyo. Stat. Ann. § 17-14-202(a)(ix) (LexisNexis 2013).

at the time the agreement was made." *Stone v. Devon Energy Prod. Co., L.P.*, 2008 WY 49, ¶ 18, 181 P.3d 936, 942 (Wyo. 2008). However, we will not "rewrite contracts under the guise of interpretation, and so long as there is no ambiguity, we are bound to apply contracts as they have been scrivened." *Amoco Prod. Co. v. EM Nominee P'ship Co.*, 2 P.3d 534, 540 (Wyo. 2000).

*Comet Energy Services, LLC v. Powder River Oil & Gas Ventures, LLC*, 2008 WY 69, ¶ 11, 185 P.3d 1259, 1263 (Wyo. 2008).

Our rules of interpretation require that we interpret a contract as a whole, reading each provision in light of all the others to find their plain meaning. *Arnold v. Ommen*, 2009 WY 24, ¶ 40, 201 P.3d 1127, 1138 (Wyo.2009); *see also Caballo Coal Co. v. Fid. Exploration & Prod. Co.*, 2004 WY 6, ¶ 11, 84 P.3d 311, 314-15 (Wyo. 2004). We presume each provision in a contract has a purpose, and we avoid interpreting a contract so as to find inconsistent provisions or so as to render any provision meaningless. *Scherer v. Laramie Reg'l Airport Bd.*, 2010 WY 105, ¶ 11, 236 P.3d 996, 1003 (Wyo. 2010).

*Claman*, 2012 WY 92, ¶ 28, 279 P.3d at 1013.

[¶36] Pertinent provisions of Article XVIII of the WFLP Agreement provide:

RESTRICTIONS UPON OWNERSHIP AND THIRD
PARTY TRANSFER OF OWNERSHIP

The ownership and transfer of a limited partnership interest is further subject to the following disclosure and condition:

THE LIMITED PARTNERSHIP INTERESTS OF WALLOP FAMILY LIMITED PARTNERSHIP HAVE NOT, NOR WILL BE, REGISTERED OR QUALIFIED UNDER FEDERAL OR STATE SECURITIES LAWS. THE LIMITED PARTNERSHIP INTERESTS OF WALLOP FAMILY LIMITED PARTNERSHIP MAY NOT BE OFFERED FOR SALE, SOLD, PLEDGED, OR OTHERWISE TRANSFERRED UNLESS SO REGISTERED OR QUALIFIED, OR UNLESS AN EXEMPTION FROM REGISTRATION OR

11

QUALIFICATION EXISTS. THE AVAILABILITY OF ANY EXEMPTION FROM REGISTRATION OR QUALIFICATION MUST BE ESTABLISHED BY AN OPINION OF COUNSEL FOR THE OWNER THEREOF, WHICH OPINION AND COUNSEL MUST BE REASONABLY SATISFACTORY TO WALLOP FAMILY LIMITED PARTNERSHIP.

Notwithstanding the foregoing restrictions upon third party transfer and ownership, the following transfers are permitted:

. . . .

**Estate Planning Transfers.** A Limited Partner will also have the right to make estate planning transfers of all or any part of his or her ownership interest in the Partnership. The term estate planning transfer will mean any transfer made during the life of a Limited Partner without value, or for full or less than full consideration, by way of a marital partition agreement and/or a transfer of all or any part of an ownership interest to another Limited Partner or between Limited Partners or to a trust whose beneficiary or beneficiaries are the Limited Partner, and/or the spouse of a Limited Partner, and/or the descendants of a Limited Partner, and/or one or more beneficiaries qualified to receive a charitable gift under Section 170(c) of the Internal Revenue Code. This agreement will bind the transferee of any estate planning transfer to the exact terms and conditions of this agreement.

The Partnership will not be required to recognize the interest of any transferee who has obtained a purported interest as the result of a transfer of ownership which is not an authorized transfer. If the ownership of a partnership interest is in doubt, or if there is reasonable doubt as to who is entitled to a distribution of the income realized from a partnership interest, the Partnership may accumulate the income until this issue is finally determined and resolved. Accumulated income will be credited to the capital account of the Partner whose interest is in question.

12

If any person or agency should acquire the interest of a Limited Partner as the result of an order of a court of competent jurisdiction which the Partnership is required to recognize, or if a Limited Partner attempts to withdraw from the Partnership by selling his interest or otherwise makes an unauthorized transfer of a partnership interest which the Partnership is required to recognize, the interest of the transferee may then be acquired by the Limited Partnership upon the following terms and conditions:

[¶37] The Decree provides, in pertinent part:

**2. Wallop Family Partnership (WFLP):** Malcolm Wallop shall retain all of his current interest in the *WFLP* and be awarded all of French Wallop's interests in the *WFLP* as his sole and separate property free and clear of all claims by French Wallop. Malcolm Wallop shall hold French Wallop harmless on the indebtedness owed to Sheridan State Bank by *WFLP* including but not limited to the operating line of credit in the approximate amount of $88,375.25 plus interest of $275.59 and the mortgage in the approximate amount of $1,562,722.90 plus interest of $127,014.64.

**3. Wallop Canyon Ranch LLC (WCR-LLC):** Malcolm Wallop shall retain his current interests (50%) and be awarded all of French Wallop's interest (50%) in the *WCR-LLC* as his sole and separate property free and clear of all claims by French Wallop.

. . . .

**50. Instruments:** Each party is hereby ordered to timely execute and deliver to the other party any necessary documents to convey title to the property awarded each respective party pursuant to the terms hereof, but in the absence therefore, this Decree shall be treated as conveyance of said property to each respective party.

[¶38] After the trial, the district court determined that French's transfer to Malcolm of her ownership interest in the WFLP pursuant to the Decree fell under the "estate planning transfers" provision of the WFLP Agreement. Goodwyn maintains that the district court should have, instead, focused upon the "court ordered transfer" language of the WFLP Agreement. He contends that Malcolm's acceptance of French's transfer of her

ownership interest, pursuant to the Decree, breached the WFLP Agreement, and that French's transfer of her ownership interest should have triggered the contractually mandated process for unauthorized transfers in Article XVIII of the WFLP Agreement. Goodwyn's assertions are inconsistent with the purposes and meaning of the WFLP Agreement.

[¶39] The terms and provisions of the WFLP Agreement are clear and unambiguous, and the parties' intentions are manifest. The WFLP Agreement will be construed according to its plain and ordinary meaning, without reference to attendant facts and circumstances or extrinsic evidence. The WFLP Agreement will be enforced according to its terms, because no other construction is appropriate. *See Claman*, 2012 WY at ¶ 27, 279 P.3d at 1013 (citing *Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 539 (Wyo. 1996)).

[¶40] The WFLP Agreement must be interpreted to effectuate the intent of the parties. This Court has recognized that Malcolm and French formed the WFLP for estate planning purposes in an effort to pass the Canyon Ranch to the Children. *See Wallop*, 2004 WY 46, ¶ 19, 88 P.3d at 1029. Considering the WFLP Agreement as a whole, it is apparent that the terms and conditions under Article XVIII were meant to promote transfers and ownership for estate planning purposes, but also to limit ownership and transferability to a third party. The provisions of the Decree awarding Malcolm all of French's interests in the WFLP and the WCR are consistent with the "estate planning transfers" provision of the WFLP Agreement. The transfer of French's WFLP interest to Malcolm was a transfer made during the life of French for full or less than full consideration, and it was a transfer of all of an ownership interest to another Limited Partner and the spouse of a Limited Partner (Malcolm). Further, the transfer of French's WFLP interest to Malcolm was not a restricted transfer to a third party, nor did it result in ownership by a third party. Accordingly, the transfer of French's interest in the WFLP pursuant to the Decree was an authorized transfer made in accordance with Article XVIII of the WFLP Agreement.

[¶41] For these reasons, we agree with the district court's ruling. The court construed the WFLP Agreement "in the context in which it was written, looking to the surrounding circumstances, the subject matter, and the purpose of the [WFLP] [A]greement [in determining] the intent of the parties at the time the agreement was made." *Comet*, 2008 WY 69, ¶ 11, 185 P.3d at 1263 (quoting *Stone*, 2008 WY 48, ¶ 18, 181 P.3d at 942). The transfer, pursuant to the Decree of French's WFLP interest and Malcolm's acceptance of the interest, did not constitute any breach of the WFLP Agreement. The district court did not err in determining that the transfer should be treated under the "estate planning transfers" provision of the WFLP Agreement.

*Duty of Paul and Malcolm as limited partners*

[¶42] Goodwyn maintains that fiduciary duties imposed upon all partners are the "duty of loyalty" and the "duty of care," pursuant to Wyo. Stat. Ann. § 17-21-404 (LexisNexis 2013). While acknowledging that the Wyoming Uniform Limited Partnership Act (WULPA) does not expressly impose any fiduciary duties upon limited partners in a Wyoming limited partnership, Goodwyn asserts that the Wyoming Uniform Partnership Act (WUPA) imposes fiduciary duties upon limited partners through Wyo. Stat. Ann. § 17-14-1009(a),[11] which links the WULPA to the provisions of the WUPA.[12] Goodwyn claims that Malcolm and Paul breached the duties owed by each of them to the WFLP and to the other limited partners of the WFLP by breaching the WFLP Agreement, diverting corporate opportunities, and personally using the Canyon Ranch. We will examine whether such duties exist as a matter of law. "Whether a legal duty exists is a question of a law, and absent a duty, there is no liability." *Bevan v. Fix*, 2002 WY 43, ¶ 46, 42 P.3d 1013, 1027 (Wyo. 2002) (quoting *Bowen v. Smith*, 838 P.2d 186, 198 (Wyo. 1992) (Brown, J., concurring)).

[¶43] The WFLP Agreement is silent as to any duties owed by the limited partners to a general partner, the limited partnership, or other limited partners. Further, there is no common law duty owed by a limited partner to a general partner, the limited partnership, or other limited partners. Thus, if any duties exist, they must be found in statutes. We must look to the provisions of the WULPA and apply our well-established rules for statutory interpretation. *See Redco Constr.*, 2012 WY 24, ¶ 26, 271 P.3d at 415-16.

[¶44] Construing the WULPA as a whole, giving effect to every word, clause, and sentence, and reading all parts of the statute *in pari materia*, we find that the Act is clear, unambiguous, and legislative intent is evident. The Act establishes that a general partner owes certain duties and responsibilities in a limited partnership. Wyo. Stat. Ann. § 17-14-503 (LexisNexis 2013). However, the WULPA is silent regarding duties imposed upon a limited partner in a limited partnership. Accordingly, the WULPA imposes no explicit statutory duties or responsibilities upon a limited partner. "[W]e will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions." *Anderson v. State*, 2014 WY 13, ¶ 14, 317 P.3d 1108, 1113 (Wyo. 2014) (quoting *Redco Constr.*, 2012 WY 24, ¶ 26, 271 P.3d at 416).

[¶45] We therefore decline Goodwyn's invitation to recognize that provisions of the WUPA regarding fiduciary duties should be required of a limited partner in a limited partnership formed under WULPA.

---

[11] Wyo. Stat. Ann. § 17-14-1009(a) (LexisNexis 2013) states: "[i]n any case not provided for in this act, the provisions of the Uniform Partnership Act [§§ 17-21-101 through 17-21-110[4] apply."
[12] Wyo. Stat. Ann. §§ 17-21-101 through 17-21-1107.

[¶46] To impose a duty upon a limited partner where none is provided under the WULPA would also defeat the purpose of forming a limited partnership. Limited partnerships provide limited partners the ability to be passive members of a partnership with limited liability and without imposing a duty upon the limited partners. The traditional purposes for imposing duties upon partners are absent in the limited partnership context. Imposing duties upon a limited partner would restrict a limited partner's benefits of a limited partnership. This is borne out by a WULPA statute: "Except as provided in the partnership agreement, a [limited partner or general partner] may lend money to and transact other business with the limited partnership and, subject to other applicable law, has the same rights and obligations with respect thereto as a person who is not a partner." Wyo. Stat. Ann. § 17-14-208 (LexisNexis 2013); *see also* Wyo. Stat. Ann. § 17-14-202(a)(viii) (LexisNexis 2013) (definition of "partner").

[¶47] Under the facts of this case, neither Paul nor Malcolm can be personally liable in their capacity as limited partners for any alleged breach of the WFLP agreement or any other breach of duty, since there is no contractual (the WFLP Agreement), or common law, or Wyoming statutory duty placed upon a limited partner to a general partner, the limited partnership, or other limited partners. *See Bevan*, 2002 WY 46, ¶ 46, 42 P.3d at 1027. Absent a duty, Paul or Malcolm cannot be liable for any alleged diversion of corporate opportunities from the WFLP by entering into business relationships through their own entities. We do not rule out the possibility that there could be occasions when a limited partner takes actions which would give rise to personal liability. *See, e.g., Red River Wings, Inc. v. Hoot, Inc.*, 751 N.W.2d 206, 221 (N.D. 2008) (limited partner veil need not be pierced in order to find liability of limited partners where they took affirmative action to dominate and interfere with the partnership); *Delaney v. Fidelity Lease Ltd.*, 526 S.W.2d 543, 545 (Tex. 1975) (personal liability "attaches to a limited partner when 'he takes part in the control and management of the business'" (internal citations omitted)). Such facts are not present in this case.

### *Duty of WCR as general partner*

[¶48] Goodwyn claims that WCR, as the general partner of the WFLP, breached its duties as a general partner to the WFLP and to the limited partners. Wyoming Statutes provide that a "general partner of a limited partnership has the rights and powers and is subject to the restrictions and liabilities of a partner in a partnership without limited partners." Wyo. Stat. Ann. § 17-14-503(a). In other words, a general partner of a limited partnership like the WFLP has the same duties as a partner in a general partnership. Our statutes specifically enumerate standards of conduct for a general partner. Wyo. Stat. Ann. § 17-21-404 (Lexis Nexis 2013) provides, in pertinent part:

> (a) The only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in this section.

16

(b) A partner's duty of loyalty to the partnership and the other partners is limited to the following:

(i) To account to the partnership and hold as trustee for it any property, profit or benefit derived by the partner, without the consent of the other partners, in the conduct and winding up of the partnership business or from a use or appropriation by the partner of partnership property or opportunity;

(ii) To refrain from dealing with the partnership in the conduct . . . of the partnership business, as or on behalf of a party having an interest adverse to the partnership without the consent of the other partners; and

(iii) To refrain from competing with the partnership in the conduct of the partnership business without the consent of the other partners before the dissolution of the partnership.

. . . .

(d) A partner's duty of care . . . is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct or a knowing violation of the law.

(e) A partner shall discharge the duties to the partnership and the other partners . . . consistent with the obligation of good faith and fair dealing . . . .

(f) A partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest. A partner may lend money to and transact other business with the partnership. The rights and obligations of a partner who lends money to or transacts business with the partnership are the same as those of a person who is not a partner, subject to other applicable law.

[¶49] Thus, in Wyoming, a general partner of a limited partnership has a fiduciary duty of loyalty to the limited partnership, as well as a duty of good faith and fair dealing. Those duties require that the general partner refrain from conducting business with the

17

partnership, refrain from competing with the partnership, refrain from grossly negligent, reckless or intentional misconduct, and deal in good faith with the partnership and the limited partners. *Id*. The issue posed to the district court was whether these duties were violated.

[¶50] As to the WCR, the district court found that WCR did not breach its duty of care. The court found that WCR did not compete with the WFLP, but rather it entered into business agreements with other entities owned and operated by individuals, some of whom were limited partners of the WFLP. These agreements allowed these separate entities to conduct various operations on the ranch property, including grazing, and hunting and fishing guiding operations. Mr. Goodwyn takes the position that these agreements and transactions violated the WCR's duty.

[¶51] A partner is not necessarily shielded from a conflict of interest simply by dealing with a separate entity. J. William Callison et al., *Partnership Law and Practice* § 12:6 (2004) (self-dealing can be "indirect, when an entity in which a partner has an interest profits from dealings with the partnership."). In *Triple Five of Minnesota, Inc. v. Simon*, 404 F.3d 1088, 1093 (8th Cir. 2005), the Simon family (d/b/a Si-Minn) and Triple Five were partners in Mall of America Associates (MOAA), a general partnership, of which Si-Minn was the managing partner. MOAA was a partner in Mall of America Company (MOAC), a limited partnership which owned the Mall of America. When another member of the limited partnership indicated its desire to sell a large portion of its interest in MOAC, it was purchased by the Simon Property Group (SPG), a publicly-traded Real Estate Investment Trust in which the Simon family had a 16% ownership interest. Notice of the transaction was only provided to Triple Five after the deal had been struck. The court held that Si-Minn, as managing partner, not only owed a fiduciary duty to Triple Five, but SPG also owed Triple Five a fiduciary duty because of its relationships to Si-Minn. *Id.* at 1095. The court reasoned:

> Although SPG is publicly traded, the connections between it and Si–Minn are far too close for comfort. Even though SPG is a public company with an independent board of directors, its day-to-day decisions were being made by the same people who were decision-makers at Si–Minn. SPG officials used information gained in their capacities as Si–Minn directors (and MOAA operatives) to profit individually through SPG participation in this transaction. And, in the process they shirked their individual and partnership duties to Triple Five. Indeed, if SPG/Si–Minn had not used subterfuge to their substantial advantage, the deal with [Teachers Insurance and Annuity Association of America] would not have been fully negotiated before it was communicated to Triple Five.

Accordingly, we find that both Si–Minn and SPG owe a duty of integrity and good faith to Triple Five in this particular transaction.

*Id*. at 1096.

[¶52]  In the case before us, Goodwyn did not bring claims against the related entities (Elk Rock Companies, LLC, formed by Paul and Sandra Wallop; and Canyon Ranch Recreation, LLC, formed by Malcolm and Paul); however, the reasoning of the *Triple Five* court supports the conclusion that self-dealing can form the basis for a finding of conflict of interest by a partner, even when the deals are with a separate entity, when that entity has substantial connections with the partner.

[¶53]  In *Birnbaum v. Birnbaum*, 539 N.E.2d 574 (N.Y. 1989), the New York Court of Appeals held that a partner had breached his fiduciary duty to his partners when he hired his wife to provide property development services without obtaining the disclosure and assent of the other partners.  The court held:

> [I]t is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect.  This is a sensitive and "inflexible" rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty.  Included within this rule's broad scope is every situation in which a fiduciary, who is bound to single-mindedly pursue the interests of those to whom a duty of loyalty is owed, deals with a person "in such close relation [to the fiduciary] * * * that possible advantage to such other person might * * * consciously or unconsciously" influence the fiduciary's judgment.  In this case, [Respondent's] financial relationship with his wife conflicted with his duty to [Appellants] and therefore violated the precept of undiluted trust at the core of his responsibilities as a fiduciary.

*Id*., at 576 (citations omitted).

[¶54]  Individuals or entities are commonly principals in related businesses; this does not in and of itself create a conflict of interest when those related entities engage in business with each other.  The WUPA specifically provides that "[a] partner does not violate a duty or obligation . . . merely because the partner's conduct furthers the partner's own interest." Wyo. Stat. Ann. § 17-21-404(f).  However, once a partner benefits from his (or

his entities') transactions with the partnership, the burden then shifts to that partner—in this case the general partner, WCR—to demonstrate that no breach of duty has occurred.

> Each partner owes to each other partner the utmost good faith, and when he, himself, benefits from transactions with the firm, he will be required to show, not only that he is within the law, but that his conduct conforms to the highest standards of honor and honesty. The relationship between partners is one of trust and confidence and when it appears, as it does here, that one of the partners has indirectly obtained property from the firm, he must rebut the presumption of fraud by clear and convincing evidence showing that he has acted in good faith, and has not betrayed the confidence reposed in him.

*Grossberg v. Haffenberg*, 11 N.E.2d 359, 360 (Ill. 1937) (citations omitted). *See also Konover Dev. Corp. v. Zeller*, 635 A.2d 798, 810 (Conn. 1994) (requiring fiduciary to prove no breach of duty by clear and convincing evidence).

[¶55] We therefore look to the challenged undisclosed transactions between WFLP and the separate entities in which Paul and Malcolm are the principals to determine whether they can meet the burden of showing by clear and convincing evidence that they breached no duty to the partnership.

[¶56] The first transaction concerns allowing Malcolm to rent the main ranch house. Historically, Malcolm and French stayed in the main house at the Ranch without paying rent. At the same time, however, they allowed WFLP livestock to graze a 40 acre parcel that they owned separately without charging rent for the use of the land. In 2005, the original main house burned down and was replaced with a new modular home. Once the new home was constructed, Malcolm began crediting WFLP with monthly rent for his occupancy of the home against WFLP's loan balance, and continued to allow the WFLP to use the 40 acre grazing parcel free of charge. The Wallops' accountant testified that this practice was common among ranch operations and that Malcolm's decision to credit the loan balance was very conservative.

[¶57] Next, the WFLP entered into a bird hunting lease with Canyon Ranch Recreation, LLC (CRR) in 2003. CRR was a limited liability company owned by Paul and Malcolm. Prior to its lease with CRR, the WFLP maintained a game bird hunting agreement with a group of lobbyists from Washington, D.C, the Big Horn Canyon Ranch, Inc. (BHC). In the 2001-02 year, the BHC payed $190,575 to the WFLP for its members and guests to hunt birds on the ranch. A major impetus for the agreement was that it allowed its members to come to Wyoming and hunt on the ranch and have access to Senator Wallop. After the BHC indicated it no longer desired to engage in bird hunting activities on the

20

Ranch, the nature of the bird hunting business there changed. There were still customers who wanted to hunt on the Ranch, but the lobbyist aspect of the hunting access was lost. There was no interest from another party in leasing the bird hunting rights.

[¶58] As a result, CRR was formed to retain the bird hunting business on the ranch and it entered into a lease agreement with WFLP to do so. Because they had no comparable leases for seasonal bird-hunting, Paul and Malcolm looked to the big game hunting lease the WFLP had with Bendabout for the use of WFLP lands. The WFLP's accountant testified that formation of the CRR eliminated risk to the WFLP and its partners and provided a steady stream of income to the WFLP. It is undisputed that the lease with CRR provided much less income to the WFLP than the prior lease with BHC. As the district court found, "the bird hunting operation was more lucrative when Senator Malcolm Wallop enjoyed special relationships from his service in the Senate; after those relationships waned, the bird hunting operation was not nearly as lucrative. This was the result of the special relationships enjoyed by the Senator, and was not related to the general partner's management of the WFLP." CRR operated from 2003 through 2011, when it shut down due to lack of business. During this time, CRR paid WFLP a total of $350,000 in lease payments. While it operated at a profit for the first three years, it lost money the rest of the time, resulting in a cumulative loss of $168,046.

[¶59] Finally, in 2005, Paul and his wife, Sandra, formed Elk Rock Companies, LLC (Elk Rock), a Wyoming limited liability company they used to conduct their personal business, including cattle and fly fishing operations. Until the spring of 2003, Jim Roach acted as the ranch manager for the WFLP. After he gave notice and left the position, Paul took over as ranch manager. As part of Roach's compensation, he grazed approximately ten cows on the WFLP year round. After Paul took over, Elk Rock purchased approximately 50 cows and a bull and grazed them on the WFLP from May through early September. These cows grazed areas that would not conflict with the grazing leases the WFLP maintained with Bendabout. Elk Rock then sold the cattle. In 2007 through 2010, Paul allowed a third party to graze approximately 50 head of livestock on the ranch. Income from that lease was paid directly to Elk Rock. Paul maintains that the benefits that Elk Rock received were consistent with the longstanding compensation that had been given to the prior ranch foreman, Roach.

[¶60] Ultimately, the district court determined that by entering into the business arrangements with the other entities, the WFLP's primary business purposes were achieved and that the WCR acted in good faith. We cannot say that finding was clearly erroneous.[13] The challenged transactions between WFLP and the separate entities in which Paul and Malcolm are the principals were not contrary to the interests of WFLP.

---

[13] The district court's conclusion that the fortuitous appreciation of the Canyon Ranch's value would obviate any breach of the duty of care that might have occurred, is, however, clearly erroneous. If the district court had found that WCR did breach its fiduciary duty to WFLP, no amount of land appreciation could cure the breach.

21

[¶61] Looking to the duties prescribed in Wyo. Stat. Ann. § 17-21-404, the record does not show that WCR ever competed with or benefitted from WFLP's property. In reviewing the district court's findings and conclusions that WCR did not breach its duty of care under the appropriate standard of review, giving WCR every reasonable inference that can fairly and reasonably be drawn from the evidence, we find no error. *Pennant*, 2011 WY 40, ¶ 7, 249 P.3d at 703 ("We do not substitute ourselves for the district court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.").

### *Piercing the veil*

[¶62] Goodwyn asserts that the district court erred in determining that there was insufficient evidence to pierce the veil of WCR to thereby impose liability upon Malcolm and Paul. The determination of whether a fiduciary duty can be breached based on self-dealing with related entities does not require veil-piercing analysis. This is because we do not consider veil-piercing until the "threshold question of whether there is liability for an underlying cause of action" has been answered. *GreenHunter Energy, Inc. v. Western Ecosystems Tech., Inc.*, 2014 WY 144, ¶ 3, 337 P.3d 454, 458 (Wyo. 2014) (action to pierce LLC veil brought after judgment had been obtained and could not be satisfied because LLC had no assets).

[¶63] It is worth noting, however, that the district court was incorrect to the extent that it held that the ***only*** way Paul and Malcolm could be found liable for their alleged tortious acts would be by piercing the corporate veil.

> An officer, director or other agent of a corporation is not personally liable for torts of the corporation or of its other officers and agents merely by virtue of holding corporate office, but can only incur personal liability by participating in the wrongful activity.
>
> Officers, directors and other agents may be held individually liable for personal participation in tortious acts even though performed solely for the benefit of the corporation, and such liability does not require that the "corporate veil" be pierced. However, it is necessary to pierce the corporate veil in order to impose personal liability upon a nonparticipating corporate officer. Participation sufficient to impose personal liability for tortious acts may consist of merely authorizing, directing, or voting for the acts, or knowing consent or approval.

22

These rules have been applied to principals of a limited liability company.

3A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 1137, at 246 (perm. ed., rev. vol. 2011 and Cum Supp. 2014-2015).

[¶64]   As the Colorado Court of Appeals explained:

> While an officer of a corporation cannot be held personally liable for a corporation's tort solely by reason of his or her official capacity, an officer may be held personally liable for his or her individual acts of negligence even though committed on behalf of the corporation, which is also held liable. *Snowden v. Taggart*, 91 Colo. 525, 531, 17 P.2d 305, 307 (1932) ("To permit an agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would often both sanction and encourage the perpetration of flagrant and wanton injuries by agents of insolvent and irresponsible corporations."); *see Sanford v. Kobey Bros. Constr. Corp.*, 689 P.2d 724 (Colo. App. 1984) (corporate representative found jointly and severally liable for construction defects he authorized).   The parties do not dispute that this principle applies equally to a manager of a limited liability company.  *See generally* § 7-80-101, et seq., C.R.S. 2002; Thompson, *The Limits of Liability in the New Limited Liability Entities*, 32 Wake Forest L. Rev. 1, 21 (1997).

> Moreover, that a defendant is at all times acting on behalf of the corporation does not relieve the defendant of liability.  *See Galie v. RAM Assocs. Mgmt. Servs., Inc.*, 757 P.2d 176 (Colo. App. 1988); *Sanford v. Kobey Bros. Constr. Corp.*, *supra*.   And the corporate veil need not be pierced where a tort action is brought against an officer or director and the elements of the tort are proved. *See Sanford v. Kobey Bros. Constr. Corp.*, *supra*; *Huffman v. Poore*, 6 Neb. App. 43, 569 N.W.2d 549 (1997).

*Hoang v. Arbess*, 80 P.3d 863, 867-68 (Colo. App. 2003).  *See also d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 524-25 (Utah Ct. App. 2006).

[¶65] Here, however, the Amended Complaint asserted no direct tort claims against Malcolm or Paul,[14] so we need not address that avenue of recovery. *See 16 Jade Street, LLC v. R. Design Constr. Co., LLC*, 747 S.E.2d 770, 773 (S.C. 2013) (because LLC member had no direct duty to the plaintiff, he had no personal liability).

[¶66] In the instant case, we have affirmed the district court's decision as to underlying liability. Because there was no breach of duty or no underlying liability, the question of whether to pierce the corporate veil will not be reached. The threshold requirement for piercing—underlying liability—has not been met. Therefore, we do not address the question of whether to pierce the corporate veil here.

## CONCLUSION

[¶67] In Docket No. S-14-0139, we affirm the district court's grant of reasonable attorney's fees in favor of Goodwyn. In Docket No. S-14-0140, finding no error, we affirm the district court's Order Following Bench Trial and Judgment and Order in all respects.

---

[14] There is a claim against them for breach of fiduciary duty; however, as individual members of the LLC, they owe no duty to the partnership.