2002 WY 95

Van EWING, on behalf of himself and all other similarly-situated shareholders of Hladky Construction, Inc., a Wyoming corporation, Appellant (Plaintiff),

v.

HLADKY CONSTRUCTION, INC., a Wyoming corporation and Mike Hladky, majority shareholder of Hladky Construction, Inc., Appellees (Defendants).

No. 01–131.

Supreme Court of Wyoming.

June 25, 2002.

James L. Edwards of Stevens, Edwards & Hallock, P.C., Gillette, Wyoming, Representing Appellant.

Paul J. Drew of Drew & Carlson, P.C., Gillette, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] While Appellant Van Ewing (Ewing) was employed by Appellee Hladky Construc-

tion, Inc., (company), he received one thousand shares of stock in the company from Appellee Mike Hladky (Hladky). Upon Ewing's resignation, Hladky demanded the return of the stock, and Ewing refused, insisting he was entitled to compensation for the return of the stock. Litigation ensued, and, after a bench trial, the trial court determined that the stock was a conditional gift with a reversionary interest and must be returned without compensation. In his appeal, Ewing contends that the evidentiary record does not support the determination that a condition was attached at the time that the gift was made, and no evidence was presented that the stock must be returned without compensation. This appeal followed.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Ewing presents this issue for our review:

Whether the decision of the district court to require the stock owned by Appellant to be returned without compensation is supported by the evidence and is correct as a matter of law?

Company and Hladky rephrase the issue as:

Whether the judgment entered in favor of the appellees is supported by the evidence.

## FACTS

[¶ 4] Ewing filed a shareholder derivative action, and Hladky counterclaimed asserting that Ewing was not a shareholder because the stock transfer was a gift conditioned on Ewing's continued employment. An unreported bench trial was held to determine Ewing's status. The parties have submitted a statement of the evidence approved by the district court in accordance with W.R.A.P. 3.03.

[¶ 5] Ewing testified that he began his employment with the company in 1991 and submitted a letter of voluntary resignation in 1998. During his employment with the company he held various positions, including foreman, foreman's superintendent, supervisor, and, at the time of his resignation from the company, as project manager for the company. Additionally, Ewing was a vice-president of the corporation and had held that position for about three years.

[¶ 6] In 1993 and 1994, Ewing received cash bonuses from the company and paid federal income tax. On March 23, 1995, he received a certificate for one thousand shares of the company's corporate stock from Hladky. The shares were reported as a gift to avoid income tax liability, and Ewing did not pay income tax on the value of the stock and never received any dividends or additional stock. Both Ewing and Hladky met with the company's accountant, Garland Marso, before the stock was given to Ewing to discuss transfer of the shares, and Marso suggested that the shares be gifted to Ewing to avoid tax consequences for Ewing. Marso also advised Ewing and Hladky to contact an attorney to prepare a buy-sell agreement of the stock and for the purpose of providing life insurance to fund such a purchase; however, no such written agreement was ever prepared. After the stock was transferred as a gift, the company purchased life insurance on each man in order to fund the purchase of each other's shares in the event of disability or death. Hladky prepared and delivered the stock certificate to Ewing stating, "now you can't quit." After Ewing resigned, he and Hladky met at a restaurant and Hladky demanded the return of the stock. Ewing stated that he would return the stock upon receipt of compensation.

[¶ 7] Hladky testified that he is the owner of all shares of the company and had made a gift of a thousand shares of stock to Ewing in March of 1995. His 1995 gift tax return reflected the transfer of a thousand shares of stock from himself to Van Ewing and his spouse. The gift's purpose was intended to provide Ewing a portion of stock that he would not later have to purchase if something happened to Hladky. Hladky admitted that Ewing had earned the stock but claimed that the gift carried a condition. Hladky testified that it was always understood between himself and Ewing that the continued ownership of Ewing's shares in the company was conditioned on Ewing's continued employment. At the time that he issued and delivered the share certificate to Ewing, Hladky advised Ewing, "now you can't quit,"

because Hladky intended that the gift of shares would terminate in the event Ewing quit his employment with the company.

[¶ 8] Marso testified that as the company's accountant he prepared the gift tax return and met with both parties on several occasions regarding a buy-sell agreement for the shares of the company. He also advised both men that if the shares were transferred as a gift rather than a bonus, Ewing would not have to pay income tax for receiving them.

[¶ 9] In its decision letter, the trial court stated:

> The parties disagree as to the reason the stock certificate was given to the Plaintiff. The Plaintiff contends it was a bonus for work he performed for the Defendant. The Defendant argues that it was pursuant to a corporate arrangement; in the event of Mike Hladky's death, Plaintiff would be able to purchase the remainder or other 90 percent of the business.

The trial court determined that both parties agreed that the stock transfer was a gift and not a bonus, and ruled that the law recognized that a gift may have a reversionary interest if delivered with the manifested intention that the donee acquire an ownership that terminates on the occurrence or non-occurrence of some special event or condition. The trial court found that the gift was delivered with the intent that it should be returned to Hladky in the event that Ewing's employment terminated. The trial court entered judgment that the stock be set over to Hladky without compensation to Ewing, and this appeal followed.

## DISCUSSION

[¶ 10] In this appeal, Ewing does not dispute the trial court's ruling as a matter of law that Hladky could make this gift with the condition that ownership revert to him upon the termination of Ewing's employment. Ewing instead contends that the evidence does not support the trial court's conclusion that Hladky expressly manifested an intent that the stock was a conditional gift that was to be returned without compensation upon employment termination.

*Standard of Review*

 [¶ 11] Essentially, Ewing's contentions challenge the trial court's determination of Hladky's intent at the time that the stock was transferred. "Whether an oral contract exists, the terms and conditions of the oral contract and the intent of the parties are generally questions of fact." *Roussalis v. Wyoming Medical Center, Inc.,* 4 P.3d 209, 250 (Wyo.2000) (quoting *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 218 (Wyo.1994)). This Court will not set aside a trial court's factual findings unless the findings are clearly erroneous or contrary to the great weight of the evidence. *Stansbury v. Heiduck,* 961 P.2d 977, 978 (Wyo.1998); *Sowerwine v. Nielson,* 671 P.2d 295, 301 (Wyo.1983);. When reviewing the record, we keep in mind the following principles:

> The judge who presided at the trial heard and saw the witnesses. He is in the best position to determine questions of credibility and weigh and judge the evidence, both expert and non-expert. Thus, on appeal, it is a firmly established and oft-stated rule that we must accept the evidence of the successful party as true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference that may fairly and reasonably be drawn from it.

*Id.*

[¶ 12] In its decision letter, the district court found:

> On one point, the parties were not mistaken and that is they both agreed that the stock certificate was a "gift." Therefore, the only question that remains is whether the gift was completed or whether the gift had some reversionary interest. Here again the Court must turn to the testimony of the parties to determine the intent therein. The testimonies of Mike Hladky and the accountant were quite clear as was the IRS Form 709. The stock was a gift. It was not a bonus. The gift had a reversionary interest—to be returned to the donor upon the happening of an event—i.e. termination. The Court notes that the

Section 4552 of the Restatement of the Law Second, Property 2d, donative transfers, states in Section 31.2 that:

"The owner of personal property may make a gift thereof to another person (the donee) in which the donor retains a reversionary interest by delivering the personal property to the donee ... with the manifested intention that the donee acquire an ownership that terminates ... on the occurrence or non-occurrence of some special event or condition."

Ewing contends that the trial court had no evidence that the conditions found were express and clearly understood by Ewing at the time that the stock was delivered. Hladky contends that the district court's discussion indicates it had sufficient evidence that he expressly conditioned the gift upon continued employment, and if employment terminated, then the stock was to be returned without compensation.

[3] [¶ 13] Because it is supported by the record, we uphold the trial court's factual determination that the parties had agreed to a gift and not a bonus. The trial court's conclusion that the law permits conditional gifts is supported by the law, as is Ewing's assertion that Hladky must have expressed his condition at the time that the gift was made. We have recognized that a valid inter vivos gift requires the presence of three elements: (1) a present intention to make an immediate gift; (2) actual or constructive delivery of the gift that divests the donor of dominion and control; and (3) acceptance of the gift. *Rose v. Rose*, 849 P.2d 1321, 1324 (Wyo.1993). North Carolina has examined the law of conditional gifts and stated:

A person has the right to give away his or her property as he or she chooses and " 'may limit a gift to a particular purpose, and render it so conditioned and dependent upon an expected state of facts that, failing that state of facts, the gift should fail with it.' " *Charlotte Park & Recreation Comm'n v. Barringer*, 242 N.C. 311, 321, 88 S.E.2d 114, 123 (1955) (quoting *Grossman v. Greenstein*, 161 Md. 71, 155 A. 190 (1931)), *cert. denied, Leeper v. Charlotte Park & Recreation Comm'n*, 350 U.S. 983, 76 S.Ct. 469, 100 L.Ed. 851 (1956). An unconditional *inter vivos* gift, however, once given is irrevocable. *See Atkins v. Parker*, 7 N.C.App. 446, 450–51, 173 S.E.2d 38, 41 (1970); *see also Thomas [v. Houston]*, 181 N.C. [91] at 94, 106 S.E. [466] at 468 [ (1921) ] (a gift *inter vivos* is absolute and takes effect at the time delivery is completed, provided there are no conditions attached). The intent of the donor to condition the gift must be measured at the time the gift is made, as any "undisclosed intention is immaterial in the absence of mistake, fraud, and the like, and the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. It judges of his intention by his outward expressions and excludes all questions in regard to his unexpressed intention." *Howell v. Smith*, 258 N.C. 150, 153, 128 S.E.2d 144, 146 (1962) (intent in context of a contract).

*Courts v. Annie Penn Memorial Hosp., Inc.*, 111 N.C.App. 134, 431 S.E.2d 864, 866 (1993). In *Courts*, the donor made a gift of stock to a hospital, and later sued for its return contending that the gift had been made on the condition that the hospital name its charitable foundation after her grandfather and the hospital had selected another name. The appellate court agreed that the relevant time period to examine her donative intent was at the time that the stock transfer was completed and, after examining the entire record, the court affirmed the trial decision that at the time that she made her donation, the donor placed no conditions upon her gift. *Id.* at 867–68.

[¶ 14] In contrast, the record before us shows that the trial court examined Hladky's intent at the time that he transferred the stock and found that he had placed conditions then. Although at trial, Ewing contended that the stock was in lieu of a bonus and unconditional, Hladky claimed that the purpose was to effectuate a corporate arrangement, so that in the event of his death, Ewing would be able to purchase the remainder or other ninety percent of the business. Each party testified, accordingly, and the trial court was charged with credibility determinations. The trial court's finding that Hladky had gifted the stock and placed con-

ditions when it was made is supported by this record, and, under our proper standard of review, we must affirm the trial court's decision.