2008 WY 69

**COMET ENERGY SERVICES, LLC, a Nevada limited liability company, Appellant (Defendant),**

v.

**POWDER RIVER OIL & GAS VENTURES LLC, a Colorado limited liability company, Appellee (Plaintiff).**

No. S–07–0063.

Supreme Court of Wyoming.

June 19, 2008.

---

Representing Appellant: Thomas F. Reese and Orintha E. Karns of Brown, Drew & Massey, LLP, Casper, Wyoming. Argument by Mr. Reese.

Representing Appellee: Blake M. Pickett of Welborn Sullivan Meck & Tooley, PC, Denver, Colorado.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Comet Energy Services, LLC (Comet) appeals from the denial of its cross motion for summary judgment and from the award of summary judgment in favor of Powder River Oil & Gas Ventures LLC (Powder River). The dispute was over the proper interpretation of an assignment of certain interests. The district court found that the assignment was unambiguous and awarded summary judgment. We reverse and remand.

## FACTS

[¶ 2] In August of 1998, Powder River purchased from Forcenergy Onshore, Inc. (Forcenergy) certain interests conveyed by an Assignment, Bill of Sale and Conveyance (1998 Assignment). The 1998 Assignment specifically referenced one well—Federal 44-4. This well was situated on a federal oil and

gas lease, BLM Lease No. WYW 0309256A, which lease covered approximately 760 acres.

[¶3]   In January 2005, Comet contacted Powder River for the purpose of purchasing Powder River's interest held under the 1998 Assignment.   During the course of the discussions between Comet and Powder River concerning the sale, a question arose as to the nature and extent of the interest conveyed by Forcenergy to Powder River under the 1998 Assignment.   Comet conducted due diligence in the form of title opinions and additional investigation in an attempt to ascertain what interest Powder River held as a result of the 1998 Assignment.   In June of 2005, Comet contacted Forcenergy to determine what interest it conveyed to Powder River in the 1998 Assignment.   Forcenergy and Comet eventually agreed that only the well unit was conveyed to Powder River and that Forcenergy had retained its interest in the remaining portion of the 760–acre lease.   Thus, on August 2, 2005, Forcenergy conveyed to Comet its interest in BLM Lease No. WYW 0309256A.   In August of 2005, Comet recorded this assignment with the BLM and subsequently informed Powder River of the assignment.

[¶4]   On November 3, 2005, Powder River filed a declaratory judgment action, seeking determination that "as between Powder River and Comet, Powder River owns all right, title, and interest to the Subject Interest conveyed by [Forcenergy] and that Comet does not own any right, title or interest in the same."   On December 29, 2005, Comet filed its Answer, Affirmative Defenses and Counterclaim seeking a counter-declaration that Powder River only obtained a limited wellbore interest under the 1998 Assignment, and that Comet, based on the 2005 Agreement with Forcenergy, acquired the balance of Forcenergy's interest in the lease.   Powder River filed a motion for summary judgment on September 14, 2006.   Comet responded to Powder River's motion and filed a cross-motion for summary judgment on November 1, 2006.   The district court held a summary judgment hearing on November 6, 2006, and entered an order granting summary judgment in favor of Powder River on February 6, 2007.   This appeal followed.

## STANDARD OF REVIEW

[¶5]   A summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law.   *Covington v. W.R. Grace–Conn., Inc.,* 952 P.2d 1105, 1106 (Wyo.1998);   *see also* W.R.C.P. 56(c).   We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as the lower court employed and used.   *Kirkwood v. CUNA Mutual Insurance Society,* 937 P.2d 206, 208 (Wyo.1997).   We do not accord deference to the district court's decisions on issues of law.   *Kanzler v. Renner,* 937 P.2d 1337, 1341 (Wyo.1997).   In cases requiring the interpretation of a contract, a summary judgment is appropriate only if the contract is clear and unambiguous.   *Kirkwood,* 937 P.2d at 208;   *Treemont, Inc. v. Hawley,* 886 P.2d 589, 592 (Wyo.1994).   *Wolter v. Equitable Res. Energy Co.,* 979 P.2d 948, 951 (Wyo.1999).   "The court considers the record from the viewpoint most favorable to the party opposing the motion, giving all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record to the opposing party."   *Powder River Oil Co. v. Powder River Petroleum Corp.,* 830 P.2d 403, 406–07 (Wyo.1992).

## DISCUSSION

[¶6]   This dispute centers on the meaning of the term "leasehold estate" as used in the 1998 Assignment.   "Assignments are contracts and are construed according to the rules of contract interpretation."   *Hickman v. Groves,* 2003 WY 76, ¶6, 71 P.3d 256, 258 (Wyo.2003) (quoting *Boley v. Greenough,* 2001 WY 47, ¶11, 22 P.3d 854, 858 (Wyo. 2001)).   The ultimate goal when interpreting a contract "is to discern the intention of the parties to the document."   *Mullinnix, LLC v. HKB Royalty Trust,* 2006 WY 14, ¶22, 126 P.3d 909, 919 (Wyo.2006).   In doing so, we first look to the specific terms of the contract and give them their plain and ordinary meaning.   *Id.; Wolter,* 979 P.2d at 951.   Plain meaning is that "meaning which [the] language would convey to reasonable persons at the time and place of its use."   *Moncrief v.*

*Louisiana Land & Exploration Co.*, 861 P.2d 516, 524 (Wyo.1993). "If the language of the contract is clear and unambiguous, then we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the contract." *Wadi Petroleum, Inc. v. Ultra Res., Inc.*, 2003 WY 41, ¶ 11, 65 P.3d 703, 708 (Wyo.2003) (quoting *Williams Gas Processing–Wamsutter Co. v. Union Pac. Res. Co.*, 2001 WY 57, ¶ 12, 25 P.3d 1064, 1071 (Wyo.2001)).

[¶ 7] With these principles in mind, we turn to the specific language of the 1998 Assignment. The granting clause provided:

... Assignor hereby transfers, grants, conveys and assigns to Assignee all of Assignor's right, title and interest in and to the following (all of which are herein called the "Interests"):

1. The oil and gas well(s) described on Exhibit "A" attached hereto ("Wells"), together with all equipment and machinery associated therewith;

2. The leasehold estate created by the lease(s) upon which the Wells are located and/or pooled/unitized therewith ("Leases") and all licenses, permits and other agreements directly associated with the Wells and/or Leases;

3. All the property and rights incident to the Wells, and the Leases, including, to the extent transferable, all agreements, surface leases, gas gathering contracts, salt water disposal leases and wells, equipment leases, permits, gathering lines, rights-of-way, easements, licenses and all other agreements directly relating thereto; and

4. All of the personal property, fixtures and improvements appurtenant to the Wells or used or obtained in connection with the operation of the Wells.

Exhibit A to the 1998 Assignment provided:

This Exhibit "A" contains the description of the wells/units with such description intended to incorporate all of Seller's/Assignor's interest in such wells/units and is not intended to be limited to Assignor's/Seller's interest in the geographic boundaries of the specific spaced/drillsite unit description therein.

| State/County | Location | Well/Unit Name | Field |
|---|---|---|---|
| Wyoming/Campbell | 4-53N-75W | Federal 44-4 | Black Hill |

[¶ 8] The parties interpret the term "leasehold estate" as used in paragraph two above quite differently. *See supra* ¶ 7. Comet points out that the language of the 1998 Assignment does not make reference to any specific lease, but only the "leasehold estate" corresponding to Federal 44–4 well. The assignment conveys the *"leasehold estate created by the lease* (s) upon which the Well(s) are located." Comet argues that if the parties had intended to convey a specific lease, they could have simply said *"lease* upon which the Well(s) is/are located," and then specifically referred to the BLM lease.

Comet cites the rule of contract interpretation requiring "[a]ll the parts and every word in a contract should, if possible, be given effect," *Sunburst Exploration, Inc. v. Jensen*, 635 P.2d 822, 825 (Wyo.1981), and contends that the use of the term *"leasehold estate"* separately from *"lease* upon which the Well(s) are located" requires that the two terms have different meanings. Comet concludes that the parties to the 1998 Assignment intended the term "leasehold estate" to mean the 40–acre "drilling unit" surrounding Federal 44–4 well as established by the Wyoming Oil and Gas Conservation Commission.[1]

---

1. "The terms 'spacing unit' or 'drilling unit' are used in the oil and gas industry to describe the area which an administrative agency has determined one well can efficiently drain." *Union Pac. Res. Co. v. Texaco, Inc.*, 882 P.2d 212, 221 (Wyo.1994). "Wyoming law refers to drilling units." *Id.* Wyo. Stat. Ann. 30–5–109(a) (Lexis-Nexis 2007) provides:

When required, to protect correlative rights or, to prevent or to assist in preventing any of the various types of waste of oil or gas prohibited by this act, or by any statute of this state, the commission, upon its own motion or on a proper application of an interested party, but after notice and hearing as herein provided shall have the power to establish *drilling units* of specified and approximately uniform size covering any pool.

(Emphasis added.)

[¶ 9] In response, Powder River argues the intention of the parties could not have been to limit the "leasehold estate" to a 40–acre drilling unit or wellbore assignment, as the term "wellbore" is not found anywhere in the plain language of the 1998 Assignment. Additionally, Powder River contends that the drilling unit does not correlate to ownership interest but is merely an administrative, geographic and/or geologic designation established by the Wyoming Oil and Gas Commission. Finally, Powder River argues that the lease language specifically rejects Comet's argument that the meaning of "leasehold estate" be limited to the acreage corresponding to the "drilling unit," pointing to the following language in Exhibit "A":

> This Exhibit "A" contains the description of the wells/units with such description intended to incorporate all of Seller's/Assignor's interest in such wells/units and *is not intended to be limited to Assignor's/Seller's interest in the geographic boundaries of the specific spaced/drillsite unit* description therein.

(Emphasis added.) Powder River maintains that the term "leasehold estate" should be read to include the entire approximately 760 acres comprising the BLM lease upon which Federal 44–4 well is located.

[¶ 10] Without further examining the specifics of the parties' arguments, we reiterate that the meaning of "leasehold estate" must first be evaluated by examining the term as used within the four corners of the 1998 Assignment. *See supra* ¶ 6. Nevertheless, both parties attempt to define the term "leasehold estate" by pointing to extrinsic sources of information: Comet looks to the 40–acre acre drilling unit as defined by the Wyoming Oil and Gas Conservation Commission, while Powder River relies upon the BLM lease upon which the assigned Federal 44–4 well is situated. Neither the BLM lease nor the 40–acre drilling unit is specifically mentioned in the 1998 Assignment.

[¶ 11] We have said that we will construe contract language "in the context in which it was written, looking to the surrounding circumstances, the subject matter, and the purpose of the agreement to ascertain the intent of the parties at the time the agreement was made." *Stone v. Devon Energy Prod. Co., L.P.,* 2008 WY 49, ¶ 18, 181 P.3d 936, 942 (Wyo.2008). However, we will not "rewrite contracts under the guise of interpretation, and so long as there is no ambiguity, we are bound to apply contracts as they have been scrivened." *Amoco Prod. Co. v. EM Nominee P'ship Co.,* 2 P.3d 534, 540 (Wyo.2000). Ambiguity is present where a contract term "is obscure in its meaning because of indefiniteness of expression or because it contains a double meaning." *Ferguson v. Reed,* 822 P.2d 1287, 1289 (Wyo. 1991). "Ambiguity is not created, however, by the parties' subsequent disagreement over the meaning of the contract." *Union Pac. Res. Co. v. Texaco, Inc.,* 882 P.2d 212, 220 (Wyo.1994); *Rainbow Oil Co. v. Christmann,* 656 P.2d 538, 542 (Wyo.1982). The existence of ambiguity is a question of law. *Amoco Prod. Co. v. Stauffer Chem. Co. of Wyo.,* 612 P.2d 463, 465 (Wyo.1980).

[¶ 12] "In cases requiring the interpretation of a contract, a summary judgment is appropriate only if the contract is clear and unambiguous." *Wolter,* 979 P.2d at 951. The meaning of specific terms and conditions and the intent of the parties generally are questions of fact to be resolved by the fact-finder. *Parkhurst v. Boykin,* 2004 WY 90, ¶ 18, 94 P.3d 450, 459 (Wyo.2004); *Ewing v. Hladky Constr., Inc.,* 2002 WY 95, ¶ 11, 48 P.3d 1086, 1088 (Wyo.2002). Summary judgment is only appropriate where "the parties' intent is clear such that reasonable minds could not differ...." *Cordero Mining Co. v. United States Fid. & Guar. Ins. Co.,* 2003 WY 48, ¶ 9, 67 P.3d 616, 621 (Wyo.2003).

> [W]here the existence of a contract or the terms of it is the point in issue, as here, and the evidence is conflicting or admits of more than one inference, "it is for the jury ... to determine whether the contract did in fact exist.... So, ... when the terms of the contract are a matter of controversy under the evidence, the question should be put to the trier of the facts as a matter for their determination, and it is not the province of the court to determine and to instruct the jury what the terms are."

*Roussalis v. Wyo. Med. Ctr., Inc.,* 4 P.3d 209, 232 (Wyo.2000) (quoting 17A C.J.S. *Contracts* § 611, at 1225–28 (1963)).

[¶ 13]   The parties designated documentary evidence and affidavits in support of their respective appellate arguments.   However, they dispute the effect, significance and legitimacy of much of that evidence.   After reviewing the entire record, and viewing the facts in the light most favorable to Comet, we conclude that material questions of fact exist regarding the intent of the parties at the time they entered into the 1998 Assignment. We find it impossible reasonably to discern the intent of the parties to the 1998 Assignment by only looking within its four corners. The 1998 Assignment is ambiguous because the term "leasehold estate" is obscure in its meaning due to indefiniteness of expression and because it can reasonably be interpreted to have more than one meaning.

## CONCLUSION

[¶ 14]   We hold that the district court improperly determined that summary judgment was appropriate under the facts of this case. The term "leasehold estate," as used in the 1998 Assignment, is ambiguous.   This ambiguity gives rise to a genuine issue of material fact concerning the intent of the parties to the assignment.   This matter is, therefore, reversed and remanded for further proceedings consistent with this opinion.