# THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 83

**APRIL TERM, A.D. 2025**

**July 24, 2025**

BARBIE JEAN SCHWINN and DEBORAH
SCHWINN BAILEY,

Appellants
(Plaintiffs/Counterclaim Defendants),

v.

ROBERT LOUIS SCHWINN, Partner;
TERRY ANN PALAZZO, Partner; and T.J.
SCHWINN, Disassociated Partner,

Appellees
(Defendants/Counterclaim Plaintiffs).

S-24-0255

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellants:*
> Jay E. Vincent* of the Law Office of Jay Vincent, Riverton, Wyoming.

*Representing Appellees:*
> James R. Salisbury of THE SALISBURY FIRM, P.C., Cheyenne, Wyoming and Katherine Ann Strike of STANBURY & STRIKE, P.C., Lander, Wyoming. Argument by Mr. Salisbury.

*Before BOOMGAARDEN, C.J., and FOX**, GRAY, FENN, and JAROSH, JJ.*

* Appellants' counsel failed to appear for oral argument.

** Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), she was reassigned to act on this matter on May 28, 2025.

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]     Appellants, Barbie Jean Schwinn and Deborah Schwinn Bailey, filed suit against Appellees, Robert Schwinn, TJ Schwinn, and Terry Ann Palazzo, seeking to wind up and terminate the Ignaz Schwinn Family Partnership Co. (the Partnership).  Following a bench trial, the district court determined Appellants wrongfully dissociated from the Partnership, there were no grounds to terminate or wind up the Partnership, and Appellants could no longer participate in the management of the Partnership.  The district court gave Appellants a lien against the Partnership's assets for their respective interests in the Partnership's property, which would be satisfied when the Partnership eventually wound up.  On appeal, Appellants assert the district court erred when it found their dissociation was wrongful and declined to order the winding up of the Partnership.  We reverse and remand.

## ISSUES[1]

I.     Did the district court err when it concluded Appellants wrongfully dissociated from the Partnership?
II.    Did the district court err when it concluded the Partnership was not dissolved by the Appellants' notice they were going to withdraw from the Partnership?
III.   Did the district court err in failing to order the winding up of the Partnership?
IV.    Did the district court err when it found there was no basis to order judicial supervision of the winding up and termination of the Partnership?

## FACTS

[¶2]     On May 14, 1984, Ignaz "Rick" Schwinn III, Deborah Schwinn Bailey, Barbie Jean Schwinn, Robert Louis Schwinn, Terry Ann Schwinn, n/k/a Terry Ann Palazzo, and Thomas John Schwinn created the Ignaz Schwinn Family Partnership Co. to manage certain assets they received from the estate of their father, Ignaz Schwinn II.[2]  The "purposes" of the Partnership were stated in ¶ 2(b) of the Partnership Agreement:

---

[1] Appellees challenge our jurisdiction over this appeal.  They assert Appellants' first motion to extend the time to file their notice of appeal was untimely because it was filed prior to the deadline for filing their notice of appeal, and it was defective because Appellants did not file a notice of appeal simultaneously with their motion.  These alleged deficiencies were corrected when Appellants filed their renewed motion to extend the deadline simultaneously with their notice of appeal on September 26, 2024. *See* W.R.A.P. 2.01(a)(1) (LexisNexis 2023) (allowing the district court to extend the time for filing a notice of appeal upon a showing of excusable neglect, if the application is filed "prior to the expiration of 45 days from entry of the appealable order").  Therefore, we have jurisdiction over this appeal, and we will not discuss this issue further.

[2] When referring to the Partners individually, we will use their first names for clarity.

1

> The purposes of the Partnership are to serve the best interests of the Partners in the management, liquidation and ultimate distribution of certain assets (or the proceeds thereof) received by the Partners in final settlement of the estate of IGNAZ SCHWINN II. In addition, the Partners may utilize the Partnership to hold and manage other assets in which they have a common interest. In furtherance of such goal, the Partnership shall have the power to acquire, hold and dispose of property of every kind, real and personal, tangible and intangible, and interests of every kind therein, wherever situated, and to receive, hold and distribute proceeds attributable to such property.

Each sibling owned an equal 1/6 interest in the Partnership. The Partnership Agreement set forth the term of the Partnership in ¶ 6(a):

> The Partnership shall continue until five years after the execution hereof and for so long thereafter as the Partnership holds any non-cash property interests, unless sooner dissolved by the death, incompetency, insolvency, withdrawal or bankruptcy of any Partner or by the consent of a majority in interest of the Partners. It is specifically agreed that no individual Partner or Partners (constituting less then [sic] a majority) shall attempt to dissolve the Partnership within the five year period. Any cost to the Partnership and any other Partners by any such attempt shall be assessed against the share (or shares) of the said individual Partner (or Partners).

The Partnership Agreement provided the Partnership's principal place of business would be Chicago, Illinois, and the interpretation of the Partnership Agreement would be governed by the Illinois Uniform Partnership Act.

[¶3]    The Partnership owned assets comprised of cash, securities, interests in Section 8 housing partnerships, mineral interests in Crook County, and real property in Fremont County. The Partnership's primary asset is real property known as the Blue Holes Ranch. The Blue Holes Ranch is a 465-acre property that is part of the greater Yellowstone basin. The main lake on the property is deeper than 1,600 feet. The property borders the Wind River Indian Reservation, and the confluence of the east fork of the Wind River is located on the property. In addition to its beautiful blue lakes, the Blue Holes Ranch also boasts unique rock formations, scenic views, and rock walls on each side that provide a privacy component. The Blue Holes Ranch has never generated significant income, and the Partners use revenue from other assets to pay for upkeep on the property.

[¶4]   Robert was the managing partner of the Partnership from 1984 until 1999, when Barbie was voted in as the managing partner.  Around 2002, Barbie wanted to obtain an appraisal of the Blue Holes Ranch so the Partners could discuss the possible sale of that asset.  Barbie, as the managing partner, filed suit against Rick and Robert because they were interfering with her efforts to obtain that appraisal.  In May 2003, a default judgment was entered against Rick and Robert enjoining them from interfering with a valid action of a majority of the Partners to obtain an appraisal.

[¶5]   In July 2004, Barbie, as the managing partner, brought a second action against Robert for interfering with the appraisal of the Blue Holes Ranch.  The Partners participated in a mediation in December 2004.  Although the Partners reached a handwritten settlement agreement, Robert refused to sign the typewritten agreements subsequently prepared by their respective attorneys.  In February 2006, Barbie, as managing partner, filed a motion to enforce the settlement agreement.   On June 20, 2006, the Partners executed a Confidential Settlement Agreement (2006 Settlement Agreement), which stated:

> The partners further agree to enter into a Resolution of the Partners Regarding Sale of the Blue Holes Ranch which provides a mechanism for the listing and sale of the ranch pursuant to the desire of the majority of the partners to sell the Blue Holes Ranch. The sales agreement shall include a Right of First Refusal, subject to the listing agreement, which provides that [Robert] shall have up to 15 days to match any legitimate offer from an outside party.

The resolution referred to in the 2006 Settlement Agreement was a document prepared after the 2004 mediation entitled: Resolution of the Partners of the Ignaz Schwinn Family Partnership Co. Regarding Sale of the Blue Holes Ranch (2004 Resolution).  The 2004 Resolution provided Barbie was "empowered and required to accomplish all the business of the [P]artnership and therefore [would] negotiate all agreements regarding the listing, sale, inspection and closing of the sale of the Blue Holes Ranch, together with any other agreements or decisions that might be necessary to accomplish the sale."  The 2004 Resolution also stated following the negotiation of these agreements, "but before any binding agreements [were] entered into regarding the sale of the Blue Holes Ranch, including the listing agreement and any sales agreement, such an agreement [would be] presented to the Partners at a meeting of the partners and the partners [would] vote on the contract."

[¶6]   Rick passed away on April 7, 2005.  Upon Rick's death, the Partnership had the option to purchase his interest.  Unfortunately, there was some confusion about the identity of Rick's beneficiary, which led to litigation and a lengthy delay.  In January 2013, the Partnership reached a settlement with Rick's beneficiary to purchase his interest for

$800,000. To accomplish this purchase, the Partnership sold a piece of real property known as the Pivot Parcel.

[¶7]    On June 20, 2016, Barbie and Deborah ("Appellants"), through counsel, sent Robert, Terry, and Thomas an email stating they were "withdrawing and disassociating" from the Partnership. They made a "formal demand" to be paid the full value of their partnership interest and indicated they were not willing to accept land in exchange for that interest. When they did not receive a response to that email, their attorney sent a letter to Robert, Terry, and Thomas on November 2, 2016, reiterating their intent to withdraw and dissociate from the Partnership. They repeated their demand for payment for the full value of their Partnership interests.

[¶8]    Thomas passed away on October 30, 2018. Thomas's interest in the Partnership was inherited by his son, Thomas John ("TJ") Schwinn, Jr. The Partnership did not exercise its right to purchase Thomas's interest from TJ. The Partners have not admitted TJ as a voting member, so he cannot participate in the management of the Partnership.

[¶9]    On July 26, 2019, Appellants, through counsel, sent Robert, Terry, and TJ a letter demanding dissolution and liquidation of the Partnership. When the Partners could not reach a resolution, Appellants filed this action in February 2020. In their first complaint, Appellants sought to either determine a buyout price for their Partnership interests or dissolve and wind up the Partnership. They also sought damages for Appellees' alleged breach of certain fiduciary duties, the duty of good faith and fair dealing, and the Partnership Agreement. In the event the district court ordered the Partnership to be wound up, Appellants also sought the appointment of a "receiver or custodian" to supervise the dissolution and winding up. Appellees asserted several counterclaims including wrongful dissociation, declaratory relief regarding the term and management of the Partnership, breach of the duty of good faith and fair dealing, appointment of a receiver, injunctive relief, and breach of contract.

[¶10]  In January 2024, Appellants filed a second amended complaint. Appellants asserted the Partnership dissolved when the Partners entered into the 2004 Resolution and 2006 Settlement Agreement. Appellants sought a declaratory judgment that the term of the Partnership was five years, and the 2004 Resolution and 2006 Settlement Agreement provided for the "dissolution/liquidation, winding [up] and termination of the Partnership." They also brought claims for breach of the Partnership Agreement, the 2004 Resolution, and the 2006 Settlement Agreement. Appellants sought judicial dissolution, liquidation, winding up, and termination of the Partnership on the grounds 1) it was authorized by the 2004 Resolution and 2006 Settlement Agreement or 2) because there was a deadlock in the voting and management of the Partnership. Appellants continued to allege Appellees breached certain fiduciary duties and the duty of good faith and fair dealing. Appellants also asked the district court to appoint a receiver to supervise the liquidation and winding up of the Partnership under Wyoming Statute § 1-33-101 et seq. (LexisNexis 2023).

4

[¶11]   The district court held a three-day bench trial beginning April 29, 2024.  The district court denied Appellants' breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing claims finding they failed to meet their burden of proof on those claims.[3]  The district court also dismissed Appellants' claims to dissolve and wind up the Partnership.  The district court found the Partnership was a partnership for "a definite term or the completion of a particular undertaking" under Illinois law.  The district court found the "particular undertaking" had not yet been completed, so Appellants were unable to force the dissolution of the Partnership.  The district court likewise dismissed Appellants' claims for an appointment of a receiver to supervise the liquidation and winding up of the Partnership.

[¶12]   After finding the Partnership was a partnership for "a definite term or the completion of a particular undertaking," the district court determined Appellants' dissociation was wrongful because they dissociated prior to the completion of the particular undertaking.  The district court determined under Illinois law, Appellants were not entitled to payment for any portion of the buyout price of their interest until the completion of the undertaking because liquidating Partnership property to purchase Appellants' interests would create an "undue hardship" on the Partnership.  The district court gave Appellants a lien against the Partnership's property to secure the ultimate payment of their interests at such time as the "undertaking of the Partnership has been completed."  The district court also found Appellants were no longer entitled to participate in the management of the Partnership because they had wrongfully dissociated.  The district court denied Appellees' other counterclaims.  Appellants timely appealed the district court's order.

## STANDARD OF REVIEW

[¶13]   "After a bench trial, we review the district court's factual findings for clear error and its conclusions of law de novo." *Fuger v. Wagoner*, 2024 WY 73, ¶ 17, 551 P.3d 1085, 1091 (Wyo. 2024) (citation omitted).  Interpretation of the Partnership Agreement presents questions of law which we review de novo. *Wallop Canyon Ranch, LLC v. Goodwyn*, 2015 WY 81, ¶ 34, 351 P.3d 943, 952 (Wyo. 2015) (citing *Weiss v. Weiss,* 2008 WY 30, ¶ 15, 178 P.3d 1091, 1097 (Wyo. 2008)).  We apply our well-known rules of contract interpretation to ascertain the parties' intentions. *Id.*  "The 'language of the parties expressed in their contract must be given effect in accordance with the meaning which that language would convey to reasonable persons at the time and place of its use.'" *Id.* at ¶ 35, 351 P.3d at 953 (quoting *Ultra Res., Inc. v. Hartman,* 2010 WY 36, ¶ 22, 226 P.3d 889, 905 (Wyo. 2010)).  When interpreting contracts, we employ "common sense" and "ascribe the words with a rational and reasonable intent." *Id.* (quoting *Ultra Res., Inc.*, ¶ 22, 226 P.3d at 905).  "When the provisions in the contract are clear and unambiguous, the court looks only to the 'four corners' of the document in arriving at the intent of the parties." *Id.*

---

[3] Appellants' brief does not challenge the district court's dismissal of these claims.

(quoting *Claman v. Popp,* 2012 WY 92, ¶ 26, 279 P.3d 1003, 1013 (Wyo. 2012)). "[W]e will not 'rewrite contracts under the guise of interpretation,'" and in the absence of ambiguity, the contract will be enforced according to its terms. *Id.* (quoting *Comet Energy Servs. LLC v. Powder River Oil & Gas Ventures, LLC*, 2008 WY 69, ¶ 11, 185 P.3d 1259, 1263 (Wyo. 2008)). We interpret a contract as a whole, and we avoid interpreting a contract in a way that renders any provision meaningless. *Id.* (quoting *Claman*, ¶ 28, 279 P.3d at 1013).

## **DISCUSSION**

[¶14] In the proceedings below, the parties disagreed about whether the Partnership Agreement was governed by the Illinois Uniform Partnership Act 1917[4] (UPA) or the revised Illinois Uniform Partnership Act 1997[5] (RUPA). At trial, Appellants asserted the UPA applied instead of the RUPA because the 2004 Resolution and 2006 Settlement Agreement dissolved the Partnership before the RUPA became applicable to the Partnership. Appellants also made alternative arguments regarding the RUPA's application to the Partnership.

[¶15] The RUPA became applicable to all Illinois partnerships by January 1, 2008. *See Alwan v. Kickapoo-Edwards Land Tr.*, 93 N.E.3d 719, 723 (Ill. App. 2018) (citing 805 Ill. Comp. Stat. Ann. 206/1206(a)-(c) (West 2016)) (finding the 1997 Act applies to all partnerships after January 1, 2008, regardless of when they were formed or if they opted in for earlier coverage). The district court found the internal affairs of the Partnership were governed by the RUPA. We agree with the district court's conclusion the Partnership Agreement is governed by the RUPA. The 2004 Resolution and 2006 Settlement Agreement did not dissolve the Partnership. Although those documents provide a procedure to list and sell the Blue Holes Ranch, they do not mention the termination, dissolution, or winding up of the Partnership. Therefore, the RUPA became applicable to the Partnership on January 1, 2008.

[¶16] Section 103(a) of the RUPA provides the relations among and between partners and a partnership are governed by the partnership agreement, but "[t]o the extent the partnership agreement does not otherwise provide," the provisions of the Act govern. 805 Ill. Comp. Stat. Ann. 206/103(a) (West 2024). Section 103(b) sets forth certain provisions that cannot be waived by a partnership agreement. 805 Ill. Comp. Stat. Ann. 206/103(b). Our review will focus on whether the district court correctly applied the RUPA and the terms of the Partnership Agreement.

---

[4] *See* Uniform Partnership Act (1917), 805 Ill. Comp. Stat. Ann. 205/1 et seq. *repealed by* 2002 Ill. Legis. Serv. P.A. 92-740 (S.B. 2049) (West).

[5] *See* 805 Ill. Comp. Stat. Ann. 206/101 et seq. (West 2024).

6

## I. Did the district court err when it concluded Appellants wrongfully dissociated from the Partnership?

[¶17] Appellants assert the district court erred when it found their dissociation was wrongful because the Partnership became an at-will partnership after the initial five-year term. They further assert there is nothing in the Partnership Agreement that could be interpreted to constitute a "particular undertaking," and the district court's decision is contrary to the language of the Partnership Agreement that permits a partner to withdraw after the initial five-year term. We agree.

[¶18] Section 101(h) of the RUPA defines a "partnership at will" as: "a partnership in which the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking." 805 Ill. Comp. Stat. Ann. 206/101(h) (West 2024). The comments to Section 101 of the Model Uniform Partnership Act explain how to distinguish between an at-will partnership and one that is for a definite term or particular undertaking:

> It is sometimes difficult to determine whether a partnership is at will or is for a definite term or the completion of a particular undertaking. **Presumptively, every partnership is an at-will partnership.** *See*, *e.g.*, *Stone v. Stone*, 292 So.2d 686 (La.1974); *Frey v. Hauke*, 171 Neb. 852, 108 N.W.2d 228 (1961). To constitute a partnership for a term or a particular undertaking, the partners must agree (i) that the partnership will continue for a definite term or until a particular undertaking is completed **and** (ii) that they will remain partners until the expiration of the term or the completion of the undertaking. Both are necessary for a term partnership; if the partners have the unrestricted right, as distinguished from the power, to withdraw from a partnership formed for a term or particular undertaking, the partnership is one at will, rather than a term partnership.
>
> To find that the partnership is formed for a definite term or a particular undertaking, there must be clear evidence of an agreement among the partners that the partnership (i) has a minimum or maximum duration or (ii) terminates at the conclusion of a particular venture whose time is indefinite but certain to occur. *See*, *e.g.*, *Stainton v. Tarantino*, 637 F. Supp. 1051 (E.D. Pa. 1986) (partnership to dissolve no later than December 30, 2020); *Abel v. American Art Analog, Inc.*, 838 F.2d 691 (3d Cir. 1988) (partnership purpose to market an art book); *68th Street Apts., Inc. v. Lauricella*, 362 A.2d 78 (N.J.

7

Super. Ct. 1976) (partnership purpose to construct an apartment building). **A partnership to conduct a business which may last indefinitely, however, is an at-will partnership, even though there may be an obligation of the partnership, such as a mortgage, which must be repaid by a certain date, absent a specific agreement that no partner can rightfully withdraw until the obligation is repaid.** *See, e.g., Page v. Page*, 55 Cal.2d. 192, 359 P.2d 41 (1961) (partnership purpose to operate a linen supply business); *Frey v. Hauke, supra* (partnership purpose to contract and operate a bowling alley); *Girard Bank v. Haley*, 460 Pa. 237, 332 A.2d 443 (1975) (partnership purpose to maintain and lease buildings).

Unif. Partnership Act 1997 § 101 cmt. (Unif. L. Comm'n 1997) (emphasis added).

[¶19]  While there is no binding case law in Illinois or Wyoming, other states and federal courts interpreting Section 101(h) of the Uniform Partnership Act have found partnerships created to manage, operate, and/or hold real property indefinitely are partnerships at will, not partnerships created for a particular undertaking. *See, e.g. Tropeano v. Dorman,* 441 F.3d 69, 77–78 (1st Cir. 2006) (holding a partnership to manage real estate until 60% of the members voted to terminate the partnership was a partnership at will, not for a particular undertaking); *Chandler Medical Bldg. Partners v. Chandler Dental Group,* 855 P.2d 787, 793–94 (Ariz. 1993) (holding a partnership to "sponsor, for a profit, the promotion, development, and construction of a two-story medical office building [and] to own, hold for investment, improve, lease, manage, operate or sell" that building was not a partnership for a particular undertaking, because the agreement did not require the sale of the building, and the facility could be leased for an indefinite amount of time); *Canter's Pharm., Inc. v. Elizabeth Assocs.*, 578 A.2d 1326, 1330 (Pa. Super. Ct. 1990) (holding a partnership to renovate, equip, and operate a personal care facility could "continue indefinitely" and was a partnership at will, not for a particular undertaking); *Jordon v. Bowman Apple Prods. Co., Inc.*, 728 F. Supp. 409, 417 (W.D. VA. 1990) (holding a partnership for the operation of an orchard and "such other businesses as the partners may from time to time determine" was not a particular undertaking capable of accomplishment by a point certain).

[¶20] When trying to determine whether the Partnership is one for a particular undertaking, the district court relied on ¶ 6(a) of the Partnership Agreement.  As cited above, that paragraph states in relevant part:

> The Partnership shall continue until five years after the execution hereof and for so long thereafter as the Partnership holds any non-cash property interests, unless sooner dissolved by the death, incompetency, insolvency, withdrawal or

bankruptcy of any Partner or by the consent of a majority in interest of the Partners. It is specifically agreed that no individual Partner or Partners (constituting less then [sic] a majority) shall attempt to dissolve the Partnership within the five year period.

[¶21]  The district court correctly determined this Partnership was not for a definite term because the express terms provided for its continuance beyond five years, and all the Partners recognized the Partnership continued to operate after that initial term.

[¶22]  The district court concluded the purposes of the Partnership set out in ¶ 2(b) of the Partnership Agreement, namely serving the best interests of the Partners in holding and managing property in which they had common interests, provided the "particular undertaking" of the Partnership.  Under ¶ 6(a), because the Partnership still owned non-cash assets, the district court determined the Partnership's undertaking was "incomplete." The district court's conclusion was incorrect.  Holding non-cash assets has neither a minimum nor maximum duration, and it is not a particular venture whose time is indefinite but certain to occur. *See* Unif. Partnership Act 1997 § 101 cmt.  Therefore, it lacks the necessary terms to be a particular undertaking.  The Partnership was formed to hold and manage non-cash assets and could last indefinitely.  In addition, the district court failed to analyze the language in ¶ 6(a) that states the Partnership continued "unless sooner dissolved by the. . . withdrawal. . . of any Partner. . . ."  The Partnership Agreement gave the Partners an unrestricted right to withdraw after the initial five-year term.  Therefore, because the Partnership could last indefinitely and it allowed the partners to withdraw at any point, the Partnership is an at-will partnership. *See* Unif. Partnership Act 1997 § 101 cmt.

[¶23]  Under Sections 601(1) and 602(a) of the RUPA, a partner may dissociate from a partnership at any time by giving notice of her express will to withdraw as a partner. 805 Ill. Comp. Stat. Ann. 206/601(1) (West 2024); 805 Ill. Comp. Stat. Ann. 206/602(a) (West 2024).  Although a partnership agreement may change many of the RUPA's default provisions, it cannot vary a partner's ability to dissociate under Section 602(a), except to require written notice. 805 Ill. Comp. Stat. Ann. 206/103(b)(5).

[¶24]  Appellants dissociated from the Partnership in writing by virtue of their June 2016 email and November 2016 letter.  Under the RUPA, a partner's dissociation may be rightful or wrongful, and wrongful dissociation carries with it certain consequences. *See, e.g.,* 805 Ill. Comp. Stat. Ann. 206/602(c) ("A partner who wrongfully dissociates is liable to the partnership and to the other partners for damages caused by the dissociation. This liability is in addition to any other obligation of the partner to the partnership or to the other partners.").  Whether Appellants' dissociation was wrongful is determinative of several of the issues in this appeal.  A partner's wrongful dissociation is governed by Section 602(b) of the RUPA, which states:

9

(b) A partner's dissociation is wrongful only if:

(1) it is in breach of an express provision of the partnership agreement; or

(2) in the case of a partnership for a definite term or particular undertaking, before the expiration of the term or the completion of the undertaking:

(i) the partner withdraws by express will, unless the withdrawal follows within 90 days after another partner's dissociation by death or otherwise under Section 601(6) through (10) or wrongful dissociation under this subsection;

(ii) the partner is expelled by judicial determination under Section 601(5);

(iii) the partner is dissociated by becoming a debtor in bankruptcy; or

(iv) in the case of a partner who is not an individual, trust other than a business trust, or estate, the partner is expelled or otherwise dissociated because it willfully dissolved or terminated.

805 Ill. Comp. Stat. Ann. 206/602(b) (West 2024). Because this is an at-will partnership, Appellants' dissociation could only be wrongful if it was a breach of the Partnership Agreement. 805 Ill. Comp. Stat. Ann. 206/602(b)(1). As discussed above, ¶ 6(a) of the Partnership Agreement specifically allows a Partner to withdraw after the initial five-year period. Appellants' notices indicated they wished to withdraw and dissociate from the Partnership. Therefore, Appellants' dissociation complied with the Partnership Agreement and was not wrongful under Section 602(b)(1) of the RUPA. The district court erred when it found Appellants wrongfully disassociated from the Partnership.

[¶25] Because the district court erred when it found the Partnership was not an at-will partnership and Appellants' dissociation was wrongful, we reverse the district court's decision on this issue.

## II. Did the district court err when it concluded the Partnership was not dissolved by Appellants' notice they were going to withdraw from the Partnership?

[¶26] The district court dismissed Appellants' claim for judicial dissolution, liquidation,

10

winding up, and termination of the Partnership on the following grounds: 1) this was not an at-will partnership, so the dissolution provisions of Section 801(1) of the RUPA were unavailable to force dissolution; and 2) the Partnership could not be terminated under Section 801(2)(iii) because the particular undertaking had not been completed. *See* 805 Ill. Comp. Stat. Ann. 206/801 (West 2024).

[¶27]  Winding up a partnership's business is governed by Article 8 of the RUPA. 805 Ill. Comp. Stat. Ann. 206/801 et seq.  If one of the triggering events listed in Section 801 occurs, "[a] partnership is dissolved, and its business must be wound up . . . ." 805 Ill. Comp. Stat. Ann. 206/801.  The other provisions in Article 8 set forth a procedure for a partnership to follow during the winding up process, including a provision that governs the settlement of partnership accounts and the distribution of assets. *See* 805 Ill. Comp. Stat. Ann. 206/807.

[¶28]  Under Section 801(1), a partnership is dissolved "in a partnership at will, [by] the partnership's having notice from a partner, other than a partner who is dissociated under Section 601(2) through (10), of that partner's express will to withdraw as a partner, or on a later date specified by the partner[.]" 805 Ill. Comp. Stat. Ann. 206/801(1).  Appellants dissociated by giving notice of their "express will to withdraw as a partner" pursuant to Section 601(1), and the exceptions found in Sections 601(2) through (10) do not apply to Appellants. *See* 805 Ill. Comp. Stat. Ann. 206/601.  Because this is an at-will partnership and Appellants dissociated pursuant to Section 601(1), their withdrawal triggered dissolution and winding up of the Partnership under Section 801(1).  Further, ¶ 6(a) of the Partnership Agreement anticipated the Partnership could be dissolved by the withdrawal of any Partner.  When Appellants sent notice of their intent to dissociate and withdraw from the Partnership, the Partnership dissolved under Section 801(1) of the RUPA and the express terms of the Partnership Agreement.

[¶29]  The district court erred when it found Section 801(1) was inapplicable to the Partnership, which dissolved when Appellants gave notice of their intent to dissociate and withdraw.  We reverse the district court's decision on this issue.

### III.  *Did the district court err in failing to order the winding up of the Partnership?*

[¶30]  The next question the Court must answer is whether that dissolution requires the Partnership's business to be wound up.  In the Third Cause of Action of the second amended complaint, Appellants sought dissolution, liquidation, winding up, and termination of the Partnership under the terms of the Partnership Agreement, the 2004 Resolution, and the 2006 Settlement Agreement.  Alternatively, the Sixth Cause of Action sought winding up and termination pursuant to the "Illinois Partnership Act" because there was a deadlock in management.  Although they did not cite to a statutory subsection, this could be interpreted as an application by a partner for a judicial determination that "it is not otherwise reasonably practicable to carry on the partnership business in conformity

11

with the partnership agreement" under Section 801(5)(iii) of the RUPA. *See* 805 Ill. Comp. Stat. Ann. 206/801(5)(iii).

[¶31]  Nothing in the 2004 Resolution or 2006 Settlement Agreement altered the terms for winding up the Partnership upon dissolution.  Therefore, whether the Partnership must be wound up upon dissolution is governed by the Partnership Agreement and the RUPA. Some of the RUPA's default provisions regarding winding up a partnership upon dissolution may be altered by a partnership agreement, while others are non-waivable. *See* 805 Ill. Comp. Stat. Ann. 206/103(b).  Because the district court incorrectly found this was not an at-will partnership and Appellants' dissociation was wrongful, it did not evaluate whether winding up was required upon dissolution.

### A. Is Winding Up Required Under Section 801(1) By Appellants' Withdrawal and Dissociation?

[¶32]  On appeal, Appellants argue giving notice of their intent to withdraw and dissociate triggered dissolution and winding up of the Partnership under Section 801(1) of the RUPA. Section 801(1) requires an at-will partnership's business to be wound up when a partner, who is not dissociated under Section 601(2) through (10), provides notice of their will to withdraw as a partner. 805 Ill. Comp. Stat. Ann. 206/801(1).  As discussed above, Appellants dissociated pursuant to Section 601(1).  In addition, Appellants have not waived winding up of the Partnership's business upon dissolution as allowed by the RUPA.[6] Therefore, the provisions of Section 801(1) apply in this case.

[¶33]  Section 801(1) is one of the RUPA's waivable provisions. *See* 805 Ill. Comp. Stat. Ann. 206/103(b).  Therefore, the Partnership Agreement could have provided an alternative to winding up upon dissolution as required under Section 801(1).  Because it found Section 801(1) was inapplicable, the district court did not analyze whether any provision of the Partnership Agreement varies the RUPA's default rules that require winding up of the Partnership's business upon dissolution.  On remand, the district court should make such an analysis.  Absent any provisions of the Partnership Agreement that vary from the

---

[6] Appellees assert even if dissolution and winding up of the Partnership was triggered under Section 801(1) by Appellants' withdrawal, Appellees waived this requirement under Section 802(b) of the RUPA.  Section 802(b) allows **all** the partners, other than those who wrongfully dissociated, to waive the right to have the partnership's business wound up. 805 Ill. Comp. Stat. Ann. 206/802(b) (West 2024) (emphasis added). Appellees' argument is premised on the district court's conclusion Appellants' dissociation was wrongful. Appellees cite no other reason or provision of the Partnership Agreement to support their argument that Section 801(1) does not apply.  We found Appellants' dissociation was not wrongful.  Appellants are seeking to have the Partnership wound up.  Therefore, they have not waived this right, and the provisions of Section 802(b) are inapplicable.  Appellants' dissociation and withdrawal triggered dissolution under the RUPA and the Partnership Agreement. *See* 805 Ill. Comp. Stat. Ann. 206/801(1); 805 Ill. Comp. Stat. Ann. 206/601(1).  Under Section 802(a) of the RUPA, the Partnership continues after dissolution "only for the purpose of winding up its business[,]" and it terminates as soon as that winding up has been completed. 805 Ill. Comp. Stat. Ann. 206/802(a).

RUPA's default rules, the district court should find dissolution and winding up under Section 801(1) was triggered by Appellants' withdrawal and order the parties to follow the winding up process set out in Article 8 of the RUPA.

## B. Is Winding Up Required Under Section 801(5)(iii) of the RUPA Due to a Deadlock in Management?

[¶34] As set forth above, the Sixth Cause of Action of the second amended complaint could be interpreted as an application by a partner for a judicial determination that "it is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement" under Section 801(5)(iii). 805 Ill. Comp. Stat. Ann. 206/801(5)(iii). At trial, Appellants repeatedly asserted there is a deadlock in voting. Appellees argued there is no deadlock because Appellants can no longer participate in the management of the Partnership, and Appellees, as the only remaining voting Partners, are in "lockstep" with each other.

[¶35] The district court found Appellants can no longer participate in the management of the Partnership because they have dissociated. However, Section 803(a) of the RUPA states:

> After dissolution, a partner who has not wrongfully dissociated may participate in winding up the partnership's business, but on application of any partner, partner's legal representative, or transferee, the appropriate court, for good cause shown, may order judicial supervision of the winding up.

805 Ill. Comp. Stat. Ann. 206/803(a). We found the Partnership dissolved upon Appellants' giving notice of their intent to withdraw and dissociate under Section 601(1). Appellants' dissociation was not wrongful. Therefore, under Section 803(a), Appellants are entitled to participate in the winding up of the Partnership. *Id.*

[¶36] If the district court determines there is some provision of the Partnership Agreement that modified the application of Section 801(1) such that winding up was not automatically triggered by Appellants' withdrawal, then it must determine if Appellants have shown "it is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement" under Section 801(5)(iii). 805 Ill. Comp. Stat. Ann. 206/801(5)(iii). If so, Section 801(5) is a non-waivable provision under Section 103(b) of the RUPA, and the district court must order the Partnership's business to be wound up. *See* 805 Ill. Comp. Stat. Ann. 206/103(b)(7).

[¶37] The district court erred when it dismissed Appellants' claims for winding up the Partnership. The district court erred when it concluded Section 801(1) did not apply to the Partnership. The district court did not analyze the Partnership Agreement to see if there

are any provisions that modify the RUPA's default provisions, such that winding up the Partnership's business following the Partnership's dissolution is not mandatory under Section 801(1). Alternatively, the district court did not analyze whether winding up would still be required under Section 801(5)(iii) of the RUPA due to a deadlock in the management of the Partnership. The district court's decision is reversed, and this case is remanded for further proceedings on this issue.

### IV. Did the district court err when it found there was no basis to order judicial supervision of the winding up and termination of the Partnership?

[¶38] In the second amended complaint, Appellants sought the appointment of a receiver because it was authorized by the 2004 Resolution and 2006 Settlement Agreement, justified under the RUPA due to the deadlock in management, or authorized by Wyoming Statute § 1-33-101. The district court found its dismissal of Appellants' claims for dissolution and winding up of the Partnership "drastically limit[ed] the bases in which [it could] legally appoint a receiver." The district court then limited its analysis to whether appointing a receiver was appropriate under Wyoming Statute § 1-33-101,[7] and it denied their request for a receiver because Appellants did not satisfy the statutory criteria. On appeal, Appellants do not challenge the district court's determination that they are not entitled to the appointment of a receiver under Wyoming Statute § 1-33-101. Instead, they assert the district court should order the Partnership to be wound up and appoint a receiver under Section 803(a) of the RUPA. 805 Ill. Comp. Stat. Ann. 206/803(a).

[¶39] As discussed above, the district court improperly dismissed Appellants' claims for dissolution and winding up of the Partnership. Therefore, the district court also incorrectly determined there was no basis to order judicial supervision of the winding up. Under Section 803(a), "[a]fter dissolution, . . . on application of any partner . . . the appropriate court, for good cause shown, may order judicial supervision of the winding up." *Id.* Appellants did not wrongfully dissociate, so they are entitled to participate in the winding up of the Partnership's business. *See* 805 Ill. Comp. Stat. Ann. 206/803; 805 Ill. Comp. Stat. Ann. 206/103. *Id.* They are also entitled to ask the district court to order judicial supervision of the winding up. *Id.* Given the long history of disputes between these parties, on remand if the district court orders the Partnership's business to be wound up, it should also determine if Appellants demonstrated "good cause" to order judicial supervision.

### CONCLUSION

---

[7] Wyoming Statute 1-33-101(a)(iii) allows a district court to appoint a receiver in a case brought "[b]y a partner or other person jointly owning or interested in any property or fund, whose right to or interest in the property or fund or the proceeds thereof is probable and where it is shown that the property or fund is in danger of being lost, removed or materially injured[.]"

[¶40] The district court erred when it determined the Partnership was a partnership for a particular undertaking rather than an at-will partnership. Because this is an at-will partnership, Appellants could dissociate at any time after the initial five-year term by giving notice of their express will to withdraw from the Partnership. The district court erred when it concluded Appellants' dissociation was wrongful and dismissed their claims for dissolution and winding up of the Partnership and for judicial supervision of the winding up. The district court incorrectly concluded the provisions of Section 801(1) of the RUPA do not apply to the Partnership. The district court did not analyze the Partnership Agreement to see if there are any provisions that vary the application of Section 801(1). Further, the district court did not analyze whether winding up is required under Section 801(5)(iii) of the RUPA due to a deadlock in the management of the Partnership. We reverse and remand to the district court for further proceedings consistent with this opinion.